UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:     10/25/19
```

JOCELYN PETTENATO, *and all others
similarly situated*, et al.,

             Plaintiffs,

            -against-

BEACON HEALTH OPTIONS, INC., et al.,

             Defendants.

19-CV-1646 (JPO) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Jocelyn Pettenato, Jill Law, Anitra Stewart, and sixteen opt-in plaintiffs, all of whom work or worked for defendants Beacon Health Options, Inc. (Options), Beacon Health Strategies LLC (Strategies), and/or ValueOptions Federal Services, Inc. (ValueOptions) (together, Beacon Health) as care management employees, bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*., New York Labor Law (NYLL) §§ 190 *et seq*. and 650 *et seq*., and the Colorado Minimum Wage Act (CMWA), C.R.S. § 8-6-101 *et seq*., on behalf of themselves and other similarly situated persons, alleging that Beacon Health misclassified them as exempt employees and failed to pay them overtime compensation in violation of provisions of the FLSA, NYLL, and CMWA. *See* Am. Compl. (Dkt. No. 44) ¶¶ 131-162.

Now before the Court is plaintiffs' motion (Dkt. No. 37) for conditional certification of their FLSA claims as a nationwide collective action, pursuant to 29 U.S.C. § 216(b), on behalf of "[a]ll individuals employed by Defendant[s] as Care Management Employees in the last three years and who were paid a salary and no overtime pay (including for hours worked in excess of forty (40) hours a week)." Pl. Mem. (Dkt. No. 38) at 7. Plaintiffs also seek approval of a proposed Notice of Lawsuit, Pl. Mem. Ex. O, to send to those individuals. Plaintiffs' motion is "within the scope of my authority under 28 U.S.C. § 636(b)(1)(A)." *Sanchez v. Salsa Con Fuego,*

*Inc.*, 2016 WL 4533574, at *1 (S.D.N.Y. Aug. 24, 2016) (Moses, M.J.) (quoting *Nahar v. Dozen Bagels Co. Inc.*, 2015 WL 6207076, at *1 (S.D.N.Y. Oct. 20, 2015)).

For the reasons that follow, the Court will grant the motion with respect to all individuals employed by Beacon Health as Care Management Employees (as that term is defined in plaintiffs' motion papers) who (a) resided or worked for defendants in New York State; (b) worked over 40 hours in one or more individual workweeks in the three years preceding June 21, 2019 (the date plaintiffs filed their conditional certification motion); (c) were paid a salary and no overtime pay; and (d) were classified as exempt by defendants for purposes of the FLSA.

I decline to conditionally certify a nationwide collective action. I conclude that, in light of the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cnty.*, 137 S.Ct. 1773 (2017), this Court may not exercise specific personal jurisdiction over the FLSA claims of out-of-state plaintiffs against these defendants, none of which is subject to general personal jurisdiction in New York. Because this Order leaves open the question of the status of the current plaintiffs who neither resided in nor worked in New York State during the relevant time period, I will direct Beacon Health to promptly file a motion to dismiss and/or transfer to address that outstanding question.

## I.   BACKGROUND

### A.   Factual Background

Beacon Health offers "clinical mental health and substance use disorder management, an employee assistance program, work/life support, specialty programs for autism and depression, and analytics to improve the delivery of care." Ans. (Dkt. No. 51) ¶ 1. Defendants Options and Strategies are Beacon Health's "two primary operating entities," while defendant ValueOptions is a wholly-owned subsidiary of Options. Def. Mem. (Dkt. No. 52) at 2. Options and ValueOptions

2

are Virginia corporations with their principal places of business in Virginia. Ans. ¶¶ 19, 22, 26-27. Strategies is a Massachusetts limited liability company; its manager is a Delaware LLC. Ans. ¶¶ 23-24.

Plaintiffs are nineteen individuals who work or worked for Beacon Health in at least eight states, either on a remote basis or in a call center environment, under various job titles generally falling under one of two categories: (1) "Utilization Management Care Managers" (UM Care Managers), and (2) "Care/Case Managers" (Care Managers). Pl. Mem. at 2-5; Declaration of Cheryl Perkins dated July 29, 2019 (Dkt. No. 52-1) ¶¶ 3-33.[1] All of the plaintiffs are "independently licensed health professionals," including licensed nurses. *Id.* ¶¶ 11, 22. According to Perkins, a Senior Vice President for Utilization Management of defendant Strategies, UM Care Managers are generally responsible for "collecting clinical information from facilities and providers and applying Defendants' medical necessity criteria to requests to authorize payment for care," and work "primarily with facilities and providers," rather than members. Perkins Decl. ¶¶ 3-4. In contrast, Care Managers "provide case management directly to high risk members," and work "with the member and all her/his treating providers, medical health plan(s) and family to develop a comprehensive care plan to support the member's recovery." *Id.* ¶ 18.[2]

---

[1] The nineteen plaintiffs are: Jocelyn Pettenato, Jill Law, Alexis Dannehower, Bonnie Walton, Camille Mackey, Heather Oswald, Katherine Sanchez, Lisa Donahue, Marquita Kelley, Renee Austin, Anitra Stewart, Theresa Gay, Wilson Bezerra-Flanders, Alicia Prachar, Jennifer Jimenez, Jennifer Schlett, Scott Alvord, Amani Mungo, and Michele Cinkewicz. (Dkt. Nos. 1-1, 1-2, 3, 8, 11, 29.)

[2] The Perkins Declaration identifies a third category of employee: "Clinical Care Coordinators," who are administrative staff who support Care Managers, and who are paid hourly, thereby excluding them (in large part) from plaintiffs' proposed collective. Perkins Decl. ¶¶ 26-31. However, one plaintiff – Marquita Kelley – held the title of "Clinical Care Coordinator I," a position that Beacon Health classified as exempt and that consequently falls within the collective. *Id.* ¶ 32.

At least five of the nineteen plaintiffs (Pettenato, Schlett, Sanchez, Alvord, and Gay) worked for Beacon Health in New York State. Pl. Mem. Exs. H, J, K, M, N. Each submitted a declaration in connection with plaintiffs' conditional certification motion. *Id.* Lead plaintiff Pettenato's declaration is representative. Pl. Mem. Ex. J. In it, she attests that Beacon Health – where she worked from August 2015 to October 2016 – referred to her job title "in multiple ways" during her employment, and "interchangeably referr[ed] to [her] as a Care Manager, Case Manager, HARP Care Manager, and HARP Case Manager." *Id.* ¶ 5. She refers to all of these jobs as within one job family – "Care Management Employees," or CMEs – which encompassed both Care Managers and UM Care Managers. *Id.* ¶ 1, 5; *see also* Pl. Mem. Ex. H ¶¶ 1-2; Ex. K. ¶¶ 1-2; Ex. M ¶¶ 2-4; Ex. N. ¶¶ 1-2.

Pettenato describes her job duties as "non-clinical," and states that she was employed to "ask members standardized questions to document their medical circumstances, input answers to those questions into Defendant's computer system, follow established guidelines designed to maximize utilization of plan resources through consistent application of predetermined criteria, coordinate care by performing ministerial tasks like arranging appointments, referrals, and obtaining necessary authorizations from members, supply members with additional information and resources to allow them to educate themselves about their health plans, and other similar non-clinical work." *Id.* ¶ 1.

Pettenato declares that "[d]espite regularly working at least 45 hours per week," she never received overtime pay. Pl. Mem. Ex. J ¶ 6. She attests that Beacon Health paid her pursuant to an "Overtime Misclassification Policy," which "(1) classified other CMEs and I as exempt, (2) paid other CMEs and I on a salary basis, and (3) denied us all overtime for our regular overtime

work." *Id.* She also attests that "at least 100" other employees in New York worked "under the same conditions as I did during my employment":

> They performed similar non-clinical Care Management Work, regularly worked in excess of 40 hours per week, and were subjected to the Overtime Misclassification Policy that denied us all overtime for our regular overtime work. The duties, hours, and Overtime Misclassification applied to CMEs did not depend on the geographic area or region we worked in, but were rather a product of working as CMEs subjected to Defendant's Overtime Misclassification Policy.

> I base my belief and knowledge of Defendant's policies on (1) conversations I've had with other CMEs who have talked with me about their job duties, hours of work, and how Defendant paid them during their employment; (2) training calls/webinars that I attended with CMEs from New York and other states; (3) training seminars I attended with other CMEs from across the country; and (4) observing other individuals performing the same job duties and working similar hours when I worked in a call center environment.

*Id.* ¶¶ 7-8; *see also* Pl. Mem. Exs. H, K, M, N.

Based on Beacon Health's alleged misclassification of these employees (and others), and Beacon Health's resulting failure to pay them overtime compensation, plaintiffs allege that Beacon Health violated the overtime provisions of the FLSA, NYLL, and CMWA. Pl. Mem. at 1, 6-7; Am. Compl. ¶¶ 131-162.

### B.    Procedural Background

Plaintiffs filed this action on February 21, 2019. (Dkt. No. 1.) On June 21, 2019, the case was referred to me for general pretrial management and for resolution of the parties' dispute concerning how the Court should sequence plaintiffs' motion for conditional collective certification and defendants' proposed motion for summary judgment (on the "threshold question" of whether the named plaintiffs "were properly subject to the professional exemption"), including related discovery. (Dkt. No. 33.)[3] On June 24, 2019, I held an initial case

---

[3] The FLSA "exempts employees employed 'in a bona fide . . . professional capacity' from its overtime provisions." *Pippins v. KPMG, LLP*, 759 F.3d 235, 237 (2d Cir. 2014) (quoting 29

management conference. On July 8, 2019, I issued an Order concluding that, in line with the "ordinary practice" in this Circuit, the parties should brief plaintiffs' conditional certification motion prior to engaging in merits discovery concerning the professional exemption. (Dkt. No. 45.)

Meanwhile, on June 21, 2019, plaintiffs filed their motion for conditional certification (Dkt. No. 37), and on June 28, 2019, filed their First Amended Complaint. On July 29, 2019, defendants filed their Answer. (Dkt. No. 51.) By August 15, 2019, plaintiffs' conditional certification motion was fully briefed. (Dkt. Nos. 52, 53.) On October 8, 2019, I held oral argument on that motion. (Dkt. No. 57.)

## II.    PERSONAL JURISDICTION

### A.    Personal Jurisdiction Generally

As noted above, Beacon Health's opposition to plaintiffs' conditional certification motion raises a threshold issue: whether this Court may exercise personal jurisdiction over the FLSA claims of out-of-state plaintiffs against out-of-state defendants in light of the Supreme Court's 2017 decision in *Bristol-Myers*. Def. Mem. at 11-13.

"The lawful exercise of personal jurisdiction by a federal court requires satisfaction of three primary requirements." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (subsequent history omitted). First, "the plaintiff's service of process upon the defendant must have been procedurally proper"; second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective"; and third, "the exercise of personal jurisdiction must comport with constitutional due process principles." *Licci*, 673 F.3d at

---

U.S.C. § 213(a)(1)). "To qualify for the learned professional exemption, an employee's primary duty must be the performance of work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 29 C.F.R. § 541.301(a).

59-60. In a federal question case, the constitutional question arises from the Due Process Clause of the Fifth Amendment, *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 102 (1987), and "the manner in which district courts assess whether the exercise of personal jurisdiction comports with constitutional due process varies depending on the asserted statutory basis." *Schentag v. Nebgen*, 2018 WL 3104092, at *14 (S.D.N.Y. June 21, 2018). If the federal statute "does not specifically provide for national service of process," and the defendants reside outside of the forum state, "a federal court applies the forum state's personal jurisdiction rules." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990)); *accord Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). *See also* Fed. R. Civ. P. 4(k)(1) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located" or "(C) when authorized by a federal statute.").

The FLSA does not provide for nationwide service of process. *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir. 1992); *Roy v. FedEx Ground Package Sys., Inc.*, 353 F. Supp. 3d 43, 53 (D. Mass. 2018); *Sergiyenko v. McCusker Holding Corp.*, 2018 WL 1508910, at *4 (D. Kan. Mar. 27, 2018); *Nicks v. Koch Meat Co.*, 2016 WL 6277489, at *3 (N.D. Ill. Oct. 27, 2016). Therefore, "[t]o determine personal jurisdiction over a non-domiciliary" in an FLSA action, the Court first applies "the forum state's long-arm statute." *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "If the long-arm statute permits personal jurisdiction," the Court then analyzes "whether personal jurisdiction comports with due process protections established under the Constitution." *Eades*, 799 F.3d at 168 (quoting *Chloé*, 616 F.3d at 164). In New York –

except in "rare" cases – these two questions yield the same result. *Eades*, 799 F.3d at 168. *See also Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 247 (2d Cir. 2007) ("New York decisions thus, at least in their rhetoric, tend to conflate the long-arm statutory and constitutional analyses by focusing on the constitutional standard: whether the defendant's conduct constitutes purposeful availment of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.") (internal quotation and editorial marks and citations omitted).

New York law provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. 302(a)(1). This section confers "specific jurisdiction over a non-domiciliary defendant arising out of particular acts." *Eternal Asia Supply Chain Mgmt. (USA) Corp. v. Chen*, 2013 WL 1775440, at *4 (S.D.N.Y. Apr. 25, 2013) (Oetken, J.) (quoting *Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836, at *2 (S.D.N.Y. Mar. 26, 2013)).[4] "To determine whether a defendant is subject to jurisdiction under 302(a)(1), the court must decide (1) whether the defendant 'transacts any business' in New York

---

[4] The Supreme Court has developed "two categories of personal jurisdiction": general and specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). A court has general jurisdiction over a foreign (sister-state or foreign-country) defendant where that defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (quotation marks and citation omitted). While general jurisdiction "renders a defendant amendable to suit on all claims," specific jurisdiction "subjects a defendant to suit only on claims that arise from conduct related to the forum." *Karoon v. Credit Suisse Grp. AG*, 2016 WL 815278, at *2 (S.D.N.Y. Feb. 29, 2016) (Oetken, J.) (internal quotation marks and citations omitted). In this case, plaintiffs do not (and could not) allege that defendants are "at home" in New York so as to authorize this Court's exercise of general jurisdiction over them. Am. Compl. ¶¶ 19, 22-24, 26-27; Pl. Reply Mem. (Dkt. No. 53) at 1-2.

and, if so, (2) whether this cause of action arises from such a business transaction." *Biro v. Nast*, 2012 WL 3262770, at *9 (S.D.N.Y. Aug. 10, 2012) (Oetken, J.) (citing *Walker*, 490 F.3d at 246).

Whether considered under New York's long-arm statute or as a matter of constitutional due process, "[i]n order for a court to exercise specific jurisdiction over a claim, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Indelicato v. Liberty Transportation, Inc.*, 2018 WL 3934074, at *7 (W.D.N.Y. Aug. 16, 2018) (quoting *Bristol-Myers*, 137 S.Ct. at 1781), *report and recommendation adopted*, 2019 WL 1506931 (W.D.N.Y. Apr. 6, 2019).

In this case, plaintiffs do not contend – and the record does not support – that any of the defendants would be subject to specific jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1) with respect to the claims of the out-of-state plaintiffs had those plaintiffs brought suit individually. *See, e.g.*, *Indelicato*, 2018 WL 3934074, at *7-8 (recommending dismissal of FLSA claims brought against out-of-state trucking company for lack of personal jurisdiction, even though plaintiff driver "might have signed his agreements" when he was in New York and some of his routes took him through New York).

### B. *Bristol-Myers*

In 2017, the Supreme Court addressed the due process protections of the Fourteenth Amendment as they apply to a state court's exercise of specific jurisdiction over the mass tort claims of out-of-state plaintiffs against an out-of-state defendant. *Bristol-Myers*, 137 S.Ct. at 1778-89. In *Bristol-Myers*, "a group of 678 plaintiffs filed a mass action, under eight identical complaints, against Bristol-Myers Squibb in California state court, for injuries caused by one of

Bristol-Myers Squibb's drugs, Plavix." *Simon v. Ultimate Fitness Grp., LLC*, 2019 WL 4382204, at *3 (S.D.N.Y. Aug. 19, 2019) (citing *Bristol-Myers*, 137 S.Ct. at 1778). 592 of the plaintiffs were residents of states other than California, and had not suffered their alleged injuries in California. *Bristol-Myers*, 137 S.Ct. at 1778. Bristol-Myers was incorporated in Delaware and headquartered in New York. *Id.* at 1777. It promptly challenged the California state court's jurisdiction to hear the claims of the out-of-state plaintiffs against it. *Id.* at 1778. After a series of appeals, the California Supreme Court held that, though Bristol-Myers was not subject to general jurisdiction in California, the California courts could exercise specific jurisdiction over the out-of-state plaintiffs' claims against it, in large part "because the claims of the nonresidents were similar in several ways to the claims of the California residents." *Id.* at 1779.

The Supreme Court reversed. It noted that "[i]n order for a state court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*,'" *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Daimler*, 571 U.S. at 127) (emphasis in *Bristol-Myers*), and that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers*, 137 S.Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919). It also explained that the primary concern in a court's analysis of whether personal jurisdiction is present must be "the burden on the defendant": "Assessing this burden obviously requires a court to consider the practical problems resulting from litigating in the forum, but it also encompasses the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers*, 137 S.Ct. at 1780. Applying these principles, the Court held that the California courts could not exercise personal jurisdiction over the claims of the out-of-state plaintiffs:

> The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition . . . all the conduct giving rise to the

nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.

*Id*. at 1782. The Court noted that its decision would "not prevent the California and out-of-state plaintiffs from joining together in a consolidated action in the States that have general jurisdiction over" over Bristol-Myers. *Id.* at 1783. Nor would it prevent the residents of particular states from suing together in their home states. *Id*.

The Supreme Court limited is decision to "the due process limits on the exercise of specific jurisdiction by a State," and thereby expressly left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers*, 137 S.Ct. at 1783-84.

In the wake of *Bristol-Myers*, federal district courts have split on the question of whether that decision prohibits their exercise of specific jurisdiction over out-of-state plaintiffs' claims against out-of-state defendants where those claims are brought in the context of a federal class action pursuant to Fed. R. Civ. P. 23. "District courts generally take one of three approaches":

> First, many courts hold that *Bristol-Myers Squibb* does not apply outside of the context of mass tort cases. Under this view, there is no constitutional unfairness in subjecting a defendant to the class claims of out-of-state plaintiffs in Rule 23 class actions, as long as a court has jurisdiction over the class representative's claims. The due process issue is avoided because Rule 23 class certification already protects a defendant's due process rights.

> Another set of district courts holds the opposite: the same due process concerns that animated *Bristol-Myers Squibb* necessarily apply to nationwide class actions in federal courts. They hold there is no principled way to distinguish between the strictures of the Fourteenth Amendment Due Process Clause and the Fifth Amendment Due Process Clause.

> A third set of district courts opts to defer this issue until class certification: since unnamed plaintiffs are merely *potential* class members who may never actually be joined to this action, it would be premature for a court to decide whether there is specific jurisdiction over the defendant(s) with respect to their claims.

*Simon*, 2019 WL 4382204, at *4 (internal citations omitted). *See also Watson v. Kellogg Sales Co.*, No. 1:19-cv-1356-DLC (S.D.N.Y. Oct. 1, 2019) (citing *Bristol-Myers* and dismissing "the claims of the named out-of-state plaintiffs" from a class action "for lack of personal jurisdiction"); *In re Welspun Litig.*, 2019 WL 2174089, at *12 (S.D.N.Y. May 20, 2019) (citing *Bristol-Myers* and dismissing California plaintiffs' claim against a foreign defendant). No circuit court has yet addressed the issue.

### C.    Application of *Bristol-Myers* to FLSA Collective Actions

#### 1.    The State of the Law

Courts addressing the impact of *Bristol-Myers* on FLSA collective actions are equally divided. "One line of cases" stems from *Swamy v. Title Source, Inc.*, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017), which held that "*Bristol-Myers* does not apply to divest courts of personal jurisdiction [over the claims of out-of-state plaintiffs] in FLSA collective actions." *Chavira v. OS Restaurant Services, LLC*, 2019 WL 4769101, at *4 (D. Mass. Sept. 30, 2019) (summarizing *Swamy*, 2017 WL 5196780, at *2, and collecting cases). *Swamy* held that, unlike the state-law tort claims at issue in *Bristol-Myers*, FLSA claims were "federal claim[s] created by Congress specifically to address employment practices nationwide":

> Congress created a mechanism for employees to bring their claims on behalf of other employees who are "similarly situated," and in no way limited those claims to in-state plaintiffs. 29 U.S.C. 216(b). Thus, our circumstances are far different from those contemplated by the Supreme Court in *Bristol-Myers.* The result of the rule Title Source urges would be that each putative collective member not residing in either the state where the suit is brought, or a state where the defendant is domiciled, could not be part of the collective action. This would splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights. This result is not mandated by *Bristol-Myer* [sic] and this order declines to extend *Bristol-Meyer* [sic] in the manner Title Source urges.

12

*Swamy*, 2017 WL 5196780, at *2. A handful of courts around the country – including the only two courts in this Circuit to have addressed the issue – have followed *Swamy*. *Mason v. Lumber Liquidators, Inc.*, 2019 WL 2088609, at *6 (E.D.N.Y. May 13, 2019) (Mann, M.J.) ("This Court finds more persuasive the reasoning of those courts that have declined to apply the Supreme Court's reasoning in *Bristol-Myers* to FLSA collective actions."), *aff'd*, 2019 WL 3940846 (E.D.N.Y. Aug. 19, 2019) (Brodie, J.); *Meo v. Lane Bryant, Inc.*, 2019 WL 5157024, at *12 (E.D.N.Y. Sept. 30, 2019) ("This Court concurs with Judge Mann's analysis in *Mason*. As a remedial statute, Congress intended for nationwide FLSA collective actions. Applying *Bristol-Myers* to FLSA collective actions would countermand that purpose.").[5] *See also Gibbs v. MLK Express Servs., LLC*, 2019 WL 1980123, at *16 (M.D. Fla. Mar. 28, 2019), *report and recommendation adopted in part, rejected in part*, 2019 WL 2635746 (M.D. Fla. June 27, 2019); *Seiffert v. Qwest Corp.*, 2018 WL 6590836, at *4 (D. Mont. Dec. 14, 2018), *motion to certify appeal denied*, 2019 WL 859045 (D. Mont. Feb. 22, 2019); *Garcia v. Peterson*, 319 F. Supp. 3d 863, 880 (S.D. Tex. 2018); *Thomas v. Kellogg Co.*, 2017 WL 5256634, at *1 (W.D. Wash. Oct. 17, 2017).

"The other line of cases" derives "from *Maclin v. Reliable Reports of Texas, Inc.*, 314 F. Supp. 3d 845 (N.D. Ohio 2018), which held that '*Bristol-Myers* applies to FLSA claims, in that it divests courts of specific jurisdiction over the FLSA claims of [out-of-state] plaintiffs'" against out-of-state defendants. *Chavira*, 2019 WL 4769101, at *5 (quoting *Maclin*, 314 F. Supp. 3d at 850). *See also Szewcyzyk v. United Parcel Service, Inc.*, 2019 WL 5423036, at *8 (E.D. Pa. Oct.

---

[5] In both *Mason* and *Meo*, the defendant "forfeited" its personal jurisdiction defense by failing to raise that defense in its answer or in any pre-answer motion. *Meo*, 2019 WL 5157024, at *11; *Mason*, 2019 WL 2088609, at *4. In both cases, therefore, the *Bristol-Myers* analysis was *dicta*.

22, 2019); *Turner v. Utiliquest, LLC*, No. 3:18-cv-00294 (M.D. Tenn. July 16, 2019); *Rafferty v. Denny's, Inc.*, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019).

In *Roy*, the District of Massachusetts joined the second line of cases, concluding that, in light of *Bristol-Myers*, the FLSA claims "of potential opt-in out-of-state employees do not provide the court with a basis to exercise personal jurisdiction" over an out-of-state defendant "as to such claims." 353 F. Supp. 3d at 52. *Roy* acknowledged that the Supreme Court left "'open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court' as apply to a state court." *Id.* at 55 (quoting *Bristol-Myers*, 137 S.Ct. at 1784). However, the court reasoned, "because the FLSA does not authorize nationwide service of process," a court facing an FLSA collective action must look to state law and the Due Process Clause of the Fourteenth Amendment for the applicable limits on its exercise of personal jurisdiction. *Roy,* 353 F. Supp. 3d at 56. So framed, *Roy* found no basis to distinguish out-of-state plaintiffs' FLSA claims from the out-of-state plaintiffs' mass tort claim at issue in *Bristol-Myers*. *Id.* at 55-58.

*Roy* recognized that some courts had distinguished class actions brought pursuant to Rule 23 from the mass tort action in *Bristol-Myers*. However, it reasoned that FLSA collective actions present a different case from Rule 23 class actions, because (1) "Rule 23 provides for 'opt out' class actions" while the FLSA "allows as class members only those who 'opt in,'" *Roy*, 353 F. Supp. 3d at 58 (quoting *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir. 1975)); (2) a certified class under Rule 23 has "independent legal status," whereas the "sole consequence" of conditional certification is the sending of court-approved notices to employees, who may then become party plaintiffs "by filing written consent with the court," *Roy*, 353 F. Supp. 3d at 58-59 (citation omitted); and (3) Rule 23's "stringent" class action certification

standards provide greater due process protections than the FLSA's relatively lenient standard for conditional collective certification. *Id.* at 60.

Having found that FLSA opt-in plaintiffs were more akin to the mass tort plaintiffs in *Bristol-Myers* than to class members under Rule 23, the *Roy* court applied the "settled principles regarding specific jurisdiction" articulated in *Bristol-Myers* and concluded it lacked specific personal jurisdiction over the FLSA claims of out-of-state plaintiffs against out-of-state defendant FedEx Ground. *Id*. at 60-62.

*Chavira* followed *Roy*. In *Chavira*, a named plaintiff filed a putative collective action against the companies behind the Outback Steakhouse chain. Defendants sought to "strike the notices of consent filed by out-of-state putative class members arguing that the Court may not exercise personal jurisdiction over Defendants with respect to claims brought by out-of-state plaintiffs." *Chavira*, 2019 WL 4769101, at *2. After noting that the FLSA did not authorize nationwide service of process, the court went on to assess whether the exercise of personal jurisdiction over those claims comported with the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment, *id.*, at *3, which requires a plaintiff to demonstrate that:

> (1) its claim directly arises out of or relates to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable.

*Id*. (quoting *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018)). The *Chavira* court held that the out-of-state plaintiffs who never worked an Outback Steakhouse in Massachusetts could not satisfy the first "relatedness" prong in light of *Bristol-Myers*. *Id.* at 6. The court explained that "it is difficult to come to a different conclusion given the language in

*Bristol-Myers*, which is repeated twice in the opinion, to the effect that for each plaintiff, 'there must be an affiliation between the forum and the underlying controversy, principally, an activity or occurrence that takes place in the forum State.'" *Id.* (internal quotation marks omitted). It therefore concluded that "the personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action." *Id.* at 6 (citations omitted).

Most recently, on October 22, 2019, the Eastern District of Pennsylvania agreed that *Bristol-Myers* applies in the FLSA context. *Szewcyzyk*, 2019 WL 5423036, at *8. In *Szewcyzyk*, three plaintiffs filed a putative collective and class action under the FLSA and the Pennsylvania Minimum Wage Act against UPS, which is incorporated in Delaware and has its principal place of business in Georgia. Defendant moved pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the FLSA claims of plaintiff Rucker, a resident of Maryland who worked for UPS in Virginia. The court granted the motion and dismissed Rucker's FLSA claim on personal jurisdiction grounds, notwithstanding plaintiffs' argument that "a nationwide FLSA collective action claim may be brought in any federal court of competent jurisdiction and is not subject to the restrictions of personal jurisdiction." *Id.*, at *8. The court reasoned that "§ 216(b) does not relieve plaintiffs of their obligation to establish personal jurisdiction over a defendant in compliance with constitutional due process principles," and that, in any event, it was "well-established" that a named plaintiff in a class or collective action "must establish that the court has personal jurisdiction over the defendant with respect to his or her claim." *Id.*

### 2. *Bristol-Myers* Prohibits the Exercise of Personal Jurisdiction Over the FLSA Claims of Out-of-State Plaintiffs Against Out-of-State Defendants

I agree with the decisions in *Roy* and *Chavira* for substantially the reasons set forth in those opinions. Because the FLSA does not provide for nationwide service of process, and

because Beacon Health has not consented to this Court's jurisdiction over it with respect to the claims of the out-of-state plaintiffs, the Court looks to New York law and the Due Process Clause to determine whether there is a sufficient nexus between those employees' claims – which are based on conduct which took place entirely outside New York – and defendants' activity in New York. *See Indelicato*, 2018 WL 3934074, at *1 (recommending dismissal of an FLSA claim against an out-of-state employer for lack of personal jurisdiction). Neither permits this Court's exercise of specific personal jurisdiction over those employees' claims. N.Y. C.P.L.R. § 302(a)(1) does not provide jurisdiction, because the out-of-state plaintiffs' claims "do not arise" from Beacon Health's transaction of business in New York. *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *5-6 (E.D.N.Y. Sept. 20, 2017). Even assuming, *arguendo*, that New York's long-arm statute provided a basis for personal jurisdiction, I would conclude that the exercise of personal jurisdiction in this case would violate due process. As explained in *Roy*, applying the "'settled principles regarding specific jurisdiction' articulated in *Bristol-Myers*," 353 F. Supp. 3d at 60-61, there is a lack of connection "between the forum and the underlying controversy" sufficient to provide the Court with specific personal jurisdiction over Beacon Health with respect to the out-of-state employees' FLSA claims at issue here. *Bristol-Myers*, 137 S.Ct. at 1781 (citation omitted).

Moreover, I agree with *Chavira* and *Roy* that an FLSA collective action is more comparable to the mass tort action in *Bristol-Myers* than to a Rule 23 class action. *See Chavira*, 2019 WL 4769101, at *6 ("The Court adopts *Roy*'s conclusion that the personal jurisdiction analysis applies to all opt-in plaintiffs in a collective action in the same way that the Supreme Court found that the personal jurisdiction analysis applies to each plaintiff in a mass tort action."). That is so because, in an FLSA collective action, "every plaintiff who opts in to a

17

collective action has party status." 7B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1807 (3d ed. 2004). *See also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Prickett v. DeKalb Cty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) ("by referring to them as 'party plaintiff[s]' Congress indicated that opt-in plaintiffs should have the same status in relation to the claims of the lawsuit as do the named plaintiffs"). Thus, among other things, the opt-in plaintiffs are subject to party discovery, *see, e.g., Ruiz v. Citibank, N.A,* 2014 WL 4635575, at *4 (S.D.N.Y. Aug. 19, 2014) (dismissing with prejudice the claims of opt-in plaintiffs who failed to comply with their discovery obligations), while Rule 23 class members are generally not. *See, e.g.*, *Stinson v. City of New York*, 2015 WL 8675360, at *1 (S.D.N.Y. Dec. 11, 2015) ("Discovery of absent class members is rarely permitted due to the facts that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions, which is to prevent massive joinder of small claims.") (citation and internal quotation marks omitted).

The opt-in structure of the FLSA differs "fundamentally" from that of a Rule 23 class action, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013), in which "personal jurisdiction over each defendant" is generally assessed only "with respect to the named plaintiffs' causes of action." *Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015, at *7 (S.D.N.Y. Aug. 1, 2018) (quoting *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *2 (S.D.N.Y. June 7, 2017)). "A collective action, on the other hand, is not a comparable form of representative action. Just the opposite: Congress added the FLSA's opt-in requirement with the express purpose of 'banning' such actions under the FLSA." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1105 (9th Cir. 2018) (citations and alterations omitted). Indeed, "[a] collective action is more

accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases." *Id.* (detailing the differences between class and collective actions and noting that a collective action is "more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases") (emphasis in original). *See also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1248 (11th Cir. 2003) (summarizing the history of the FLSA's opt-in provision and referring to § 216(b) as "a fundamentally different creature than the Rule 23 class action"). I therefore conclude that the cases which have found *Bristol-Myers* inapplicable in the Rule 23 context are distinguishable.

I recognize the serious policy arguments raised by other courts (and by plaintiffs' counsel here), including that applying *Bristol-Myers* to FLSA collective actions could "splinter most nationwide collective actions, trespass on the expressed intent of Congress, and greatly diminish the efficacy of FLSA collective actions as a means to vindicate employees' rights." *Mason*, 2019 WL 2088609, at *6 (quoting *Swamy*, 2017 WL 5196780, at *2). Those arguments do not alter my conclusion. First, this Court's obligation to follow the law cannot be overshadowed by "even the most compelling" policy arguments. *Chavira*, 2019 WL 4769101, at *6. Second, plaintiffs' policy concerns are somewhat overstated. Applying *Bristol-Myers* to FLSA collective actions will *not* prevent a nationwide FLSA collective of plaintiffs from "joining together in a consolidated action" in a state that has general jurisdiction over Beacon Health – such as, in this case, Virginia. *Bristol-Myers*, 137 S.Ct. at 1783.[6] Finally, I note that Congress remains free to

---

[6] To be sure, some splintering may still occur where, as here, plaintiffs sue several defendants, one of whom (Strategies, a Massachusetts limited liability company whose manager is a Delaware LLC) is not at home in the same state as the others. The same issue was implicated by *Bristol-Myers*, however, where plaintiffs sued both Bristol-Myers and McKesson Corporation, "a pharmaceutical distributor headquartered in California," *Bristol-Myers Squibb Co. v. Superior*

authorize nationwide service of process under the FLSA, as it has done in a number of other statutes. *See, e.g.*, 15 U.S.C. § 22 (antitrust); 18 U.S.C. § 1965(a) (RICO); 18 U.S.C. § 2334(a) (Anti-Terrorism Act); 29 U.S.C. § 1132(e)(2) (ERISA). Until it does, however, plaintiffs wishing to take advantage of the collective action procedures of the FLSA must sue their employers either where specific personal jurisdiction can be obtained or where that employer is at home.

Plaintiffs' request to conditionally certify a nationwide collective is therefore DENIED. The Court now turns to whether a collective of New York plaintiffs should be conditionally certified.

## III.   FLSA CONDITIONAL CERTIFICATION

### A.   Legal Standards

The FLSA provides that "any one or more employees" may bring an action against an employer for and on behalf of "himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To become a party to such an action, an employee must file written consent in the court in which the action is brought. *Id.* "Although they are not required to do so by FLSA, district courts 'have discretion, in appropriate cases,' to implement § 216(b) 'by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Sanchez*, 2016 WL 4533574, at *2 (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 554 (2d Cir. 2010)).

"The Second Circuit has established a two-step process for certifying a collective action under the FLSA." *Mathew v. SMZ Impex, Inc.*, 2019 WL 4409442, at *3 (S.D.N.Y. Sept. 16,

---

*Court*, 1 Cal. 5th 783, 789, 377 P.3d 874, 878 (2016) (subsequent history omitted), and this fact did not appear to have affected the Supreme Court's analysis. Moreover, a wise defendant will remain free to waive its personal jurisdiction defense in order to avoid the inefficient outcome of defending two parallel nationwide collective actions, against related defendants, and brought by potentially overlapping groups of plaintiffs.

2019) (Oetken, J.). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.)). "In a FLSA exemption case, plaintiffs accomplish this by making some showing that 'there are other employees . . . who are similarly situated with respect to their job requirements and with regard to their pay provisions,' on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme." *Myers*, 624 F.3d at 555 (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008)).

At this first step – often referred to as "conditional certification" – "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Hypolite v. Health Care Servs. of New York Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). Indeed, if "the employees are similarly situated" with regard to their job requirements and their pay provisions, "any factual variances that may exist between the plaintiff and the putative" collective will not defeat conditional certification. *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (citing *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)). "Because the determination that plaintiffs are similarly situated is merely a preliminary one, courts generally grant conditional certification." *Jackson*, 298 F.R.D. at 158-59.

A plaintiff's "'modest factual showing' cannot be satisfied simply by 'unsupported assertions,'" but "it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (emphasis in original) (citations omitted). "[A]n FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Mathew*, 2019 WL 4409442, at *3 (quoting *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018)). In cases involving employees at multiple business locations, "courts consider whether the plaintiffs have made an adequate factual showing to support an inference that . . . a uniform policy or practice exists, and whether the locations share common ownership or management." *Sanchez*, 2016 WL 4533574, at *3 (quoting *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 5558 (S.D.N.Y. 2013)).

At the second step, "after plaintiffs have opted in and there has been discovery, 'courts conduct a more stringent "second tier" analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs.'" *Jackson*, 298 F.R.D. at 158 (quoting *Indergit v. Rite Aid Corp.,* 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010)). "If the court determines that the plaintiffs are not similarly situated, the collective action will be de-certified and the opt-in plaintiffs' claims will be dismissed without prejudice." *Jackson*, 298 F.R.D. at 158 (quoting *Myers,* 624 F.3d at 555).

### A.   Conditional Certification of a New York Collective Action

#### 1.   Plaintiffs Have Met Their Modest Burden

Plaintiffs have submitted five declarations from employees who worked for Beacon Health in New York State. Pl. Mem. Exs. H, J, K, M, N. Each declaration describes the declarant's job duties, job titles, and hours worked, as well as Beacon Health's policy of denying

him or her – and other employees classified as exempt who performed similar duties – overtime pay. *Id*. These declarations, which generally corroborate one another, provide a sufficient evidentiary foundation for conditional certification. *See Colon v. Major Perry Street Corp.*, 2013 WL 3328223, at *6 (S.D.N.Y. July 2, 2013) (Oetken, J.) ("it is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action"). Moreover, plaintiffs have submitted two 2019 New York State job postings from Beacon Health – for an "Intensive Care Manager-Child" and a "HARP Care Manager-Manhattan" – corroborating both their descriptions of their job duties and the existence of other similarly situated employees in New York State. Pl. Mem. Ex. A, at ECF pages 81-90.

On the specific facts of this case, the differences between plaintiffs' job titles do not weigh against conditional certification. The New York employees attest that, at various times, Beacon Health referred to their positions as "Care Manager," "Utilization Review – Care Manager," and "Utilization Care Manager," Pl. Mem. Ex. M ¶ 3; "RN Case Manager," "Care Manager," and "Case Manager," *id.* Ex. N ¶ 3; "Intensive Care Manager," "Care Manager – Utilization Review," "Case Manager," and "Care Manager," *id.* Ex. H ¶ 2; "Care Manager," "Case Manager," "HARP Care Manager," and "Harp Case Manger," *id*. Ex. J ¶ 5; and "Care Manager" and "Case Manager." *Id.* Ex. K ¶ 2. Beacon Health concedes that these positions fall within the two broader job categories it describes as UM Care Managers and Care Managers. Perkins Decl. ¶¶ 12, 23. Moreover, plaintiffs have pointed to case law conditionally certifying collectives of similar employees in the same industry, including employees with titles such as "Care Coordinator" or "Care Manager," with comparable job responsibilities. Pl. Mem. at 15 n.80. *See also Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 432-36 (D.N.M. 2018)

(conditionally certifying a collective of "Care Coordinators and Care Managers," notwithstanding the thirty-six different job titles defendants used to refer to them).

Defendants' remaining arguments – that there was significant variation among the job duties of the various roles in issue; that plaintiffs (and similarly situated employees) were properly categorized as exempt under the FLSA; and that "determining whether potential plaintiffs are similarly situated will require a fact-specific, highly individualized inquiry into their activities," Def. Mem. at 17 – are each better addressed at step two, when the Court can "conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." *Jackson*, 298 F.R.D. at 159 (quoting *Indergit*, 2010 WL 2465488, at *4). Plaintiffs have satisfied their modest burden to show that there "may be 'similarly situated'" employees "to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d 555. *See also Jackson*, 298 F.R.D. at 161 ("Plaintiff need only demonstrate that her position is similar to that of putative class members, not identical, and [defendant] cannot defeat this showing by arguing that individual issues may predominate over common ones.").[7]

## 2.   Notice Should be Keyed to the Date of Plaintiffs' Motion

In this case, plaintiffs request conditional certification of a group consisting of "[a]ll individuals employed by Defendant as Care Management Employees in the last three years and who were paid a salary and no overtime pay (including for hours worked in excess of forty (40)

---

[7] Because this Order's conditional certification extends only to individuals who lived or worked in New York State, the Court does not reach defendants' arguments premised on the creation of a new position – the "UM Intake Coordinator" – as part of an internal reorganization that began in February 2018 and "has now taken full effect" only in New Jersey and Florida. *See* Perkins Decl. ¶¶ 14-17; Def. Mem. at 5, 15, 17.

hours a week)." Pl. Mem. at 7. Plaintiffs do not specify the date from which the Court should measure the "last three years," and defendants do not address that issue.

As an initial matter, "notice should generally be directed to those employed within three years of the date of the mailing of the notice," because the FLSA's "three-year statute of limitations period for willful FLSA violations runs for each individual plaintiff until that plaintiff consents to join the action." *Winfield v. Citibank, N.A.,* 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012) (citing 29 U.S.C. § 255 and *Whitehorn v. Wolfgang's Steakhouse, Inc.,* 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011)). However, because equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to an earlier date, such as "the date of the motion to certify." *Mathew*, 2019 WL 4409442, at *6. *See also Jackson*, 298 F.R.D. at 170-71 (same). It is therefore appropriate for plaintiffs to include all potential collective action members employed at Beacon Health since June 21, 2016, three years before plaintiffs filed their motion, with the understanding that defendants may challenge the timeliness of individual plaintiffs' claims in the future.

### B.   Content and Method of Notice

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains 'broad discretion' over the form and content of the notice." *Contrera v. Langer*, 278 F. Supp. 3d 702, 721 (S.D.N.Y. 2017) (quoting *Martin v. Sprint/United Mgmt. Co.*, 2016 WL 30334, at *15 (S.D.N.Y. Jan. 4, 2016)). "When exercising its broad discretion to craft appropriate notices in individual cases," the court considers "the overarching policies of the collective suit provisions," including judicial efficiency and "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (citations omitted). Courts should be "guided by the goals

of the notice: to make as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Elmajdoub v. MDO Dev. Corp.*, 2013 WL 6620685, at *4 (S.D.N.Y. Dec. 11, 2013) (quoting *Guzelgurgenli v. Prime Time Specials, Inc.,* 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)).

"The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn,* 767 F. Supp. 2d at 450 (quoting *Fasanelli,* 516 F. Supp. 2d at 323). To that end, notice generally should contain "the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries." *Jackson*, 298 F.R.D. at 169-70. Plaintiffs' proposed notice, Pl. Mem. Ex. O, addresses each of these elements.

Defendants argue that the notice should be supplemented in three ways, as discussed below. Defendants also object to plaintiffs' proposed method of communicating the notice to potential opt-in plaintiffs.

## 1.    Content of Notice

### a.    *Defendants' Denial of Plaintiffs' Allegations*

Plaintiffs' proposed notice includes the statement that "[t]he Company denies the allegations in the lawsuit." Pl. Mem. Ex. O at 1. Defendants request that the notice contain a more detailed description of their denial: "Defendants deny that they owe the plaintiffs any additional compensation. Defendants assert that plaintiffs were bona fide professionals, and the

clinical decision-making entailed in plaintiffs' work required discretion and independent judgment and thus the plaintiffs were properly treated as salaried employees and are not entitled to overtime." Def. Mem. at 19.

The Court directs plaintiffs to include defendants' requested language, which is both reasonable, in light of the contested issues in this case, and consistent with prior case law in this District. *See e.g., Martin*, 2016 WL 30334, at *17 ("Accordingly, plaintiffs are directed, in consultation with the defense, to amend the Notice to include (1) a more fulsome statement of defendants' positions and defenses, and (2) an explicit statement that the Court has not yet made any determination on the merits of plaintiffs' claims."). Plaintiffs are directed to add defendants' proposed language, at a location in the notice amenable to both parties.

### b.       *Obligations and Risks of Party Plaintiffs*

Defendants next request that the notice include language informing potential plaintiffs of the obligations and risks that accompany becoming party plaintiffs in this action:

> Individuals who join this action will assume the role of parties to the litigation, which comes with obligations and risks. If you join the case, you may be asked to provide relevant documents, respond to written questions, and**/or** provide testimony under oath at deposition in New York, New York. You may also be required to attend and testify at the trial of this matter, which will also occur in New York. In addition, you will be required to preserve **relevant** evidence including, but not limited to, your social media accounts for the relevant time period~~, potentially at your own expense~~.

Def. Mem. at 20 (modifications by the Court in bold). Plaintiffs' proposed notice contains no comparable language.

The Court directs plaintiffs to include this language, as modified, which appropriately advises potential plaintiffs about their potential litigation obligations and is consistent with this Court's prior holdings. *See Sanchez*, 2016 WL 4533574, at *6 ("Courts in this District have also held that notice should include . . . a warning that opt-in plaintiffs may be required to provide

information, appear for a deposition, and testify in court."); *Jackson*, 298 F.R.D. at 170 ("The notice does not, however, advise potential plaintiffs that they may be required to provide information, appear for a deposition, or testify if they opt in. Because this information will aid potential plaintiffs in determining whether they would like to opt in, the Court directs Plaintiff to add a provision to the notice containing such information.").

<em>c.</em>        <strong><em>Potential Obligation to Pay Costs</em></strong>

Defendants next request that the notice contain language concerning plaintiffs' potential obligation to pay defendants' costs: "If Defendants ultimately prevail in the litigation, they may seek to recover certain litigation costs from the plaintiffs, including any individuals who join the case as opt-in plaintiffs." Def. Mem. at 21. Plaintiffs' proposed notice contains no such language.

The Court concludes that the chilling effect of defendants' proposed language outweighs its utility. "While some courts have permitted similar notice, others have found language about potential costs to be inappropriate given the remote possibility that such costs" would be "other than de minimis, and the risk of an in terrorem effect that is disproportionate to the actual likelihood that costs will occur in any significant degree." *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 117-18 (S.D.N.Y. 2015) (internal citations, quotation marks, and ellipses omitted). "This rationale is persuasive." *Id.* The notice need not include defendants' proposed language concerning costs.

The Court has reviewed the remainder of plaintiffs' proposed notice and finds that it satisfies "the goals of the notice." *Elmajdoub*, 2013 WL 6620685, at *4. Plaintiffs shall modify the proposed notice consistent with the above, and to reflect the Court's ruling that the conditional certification is limited to individuals who worked or resided in New York State.

28

##### 2.      Methods of Notice

Plaintiffs propose that the notice and consent forms be delivered to potential opt-in plaintiffs via U.S. mail, personal email, work email, and text message, with a reminder notice to follow within thirty days of the initial mailing of notice. Pl. Mem. at 17-19; Pl. Reply Mem. at 9-10. Defendants propose that the notice be delivered via "a single mailed notice." Def. Mem. at 21.

Plaintiffs' request to deliver notice by U.S. mail, personal email, and work email (for current employees) is approved. *Sanchez*, 2016 WL 4533574, at *7 ("first class mail and email may both serve as efficient means of ensuring that potential opt-in plaintiffs receive timely notice, and are therefore approved"); *Jackson*, 298 F.R.D. at 170 (granting "authorization to issue a proposed notice to potential class members by mail and e-mail" and "authorization to re-mail notices that are returned as undeliverable"). So too is their request to send a reminder notice. *See Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Both parties cite case law either authorizing or rejecting the issuance of a reminder notice. Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.") (internal citations omitted).

Plaintiffs' request to deliver notice by text message – in addition to mail and email – is denied. *See, e.g.*, *Turban v. Bar Giocosa Corp.*, 2019 WL 3817338, at *1 (S.D.N.Y. Aug. 14, 2019) (declining to approve text-message notice because the plaintiffs had not "sufficiently demonstrated that turnover and relocation by potential members of the collective [would] render mailed notice ineffective"); *Park v. FDM Grp. Inc.*, 2019 WL 2205715, at *7 (S.D.N.Y. May 22,

2019) ("without more information regarding the [plaintiffs'] typical length of employment, the Court will not authorize distribution via text message").

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional collective certification (Dkt. No. 37) is GRANTED IN PART and DENIED IN PART. It is further ORDERED that:

1.    Plaintiffs shall submit a revised version of their proposed Notice of Lawsuit and Consent to Join, Pl. Mem. Ex. O, together with their proposed form of reminder, for final review within **seven days of the date of this Order**.

2.    To the extent not previously done, defendants shall provide plaintiffs' counsel, within **14 days of the date of this Order,** with the names, last known addresses, and email addresses (including personal email addresses for both current and former employees and work email addresses for current employees) of all Care Management Employees (as that term is defined in plaintiffs' motion papers) who (a) resided or worked for defendants in New York State; (b) worked over 40 hours in one or more individual workweeks in the three years preceding June 21, 2019; (c) were paid a salary and no overtime pay; and (d) were classified as exempt by defendants for purposes of the FLSA.

3.    Plaintiffs shall mail and email the final Notice and Consent to Join no later than **21 days after the Court approves the revised forms**, and may mail and email the reminders thereafter.

4.    The parties shall **promptly** meet and confer regarding the claims of the out-of-state named plaintiffs (and the potential claims of similarly situated out-of-state employees) concerning, among other things, whether those claims should be

dismissed or whether this action should be transferred to another jurisdiction where Beacon Health is "at home." *See e.g. Acey v. HMS Host USA, Inc.*, 2019 WL 2177239, at *1 (D. Md. May 20, 2019) (noting that after plaintiffs filed a putative nationwide collective action in the United States District Court for the Western District of Tennessee, and defendants "filed multiple motions to dismiss for lack of personal jurisdiction with respect to non-Tennessee opt-in plaintiffs," plaintiffs "ultimately consented to transfer the case to the District of Maryland, where Defendants' corporate headquarters are located").

5.      Any stipulation and proposed order regarding dismissal or transfer should be filed **within 14 days of this Order**.

6.      Absent such a stipulation, no later than **28 days after the date of this Order**, defendants shall file their motion to dismiss the claims of the plaintiffs who neither worked nor resided in New York State during the relevant period and/or to transfer this action. Defendants' motion shall conform to the individual practices of the district judge.

7.      Judge Moses will conduct a status conference on **November 26, 2019, at 11:00 a.m.** The parties should be prepared to discuss, *inter alia*, the schedule for the remainder of fact and expert discovery.

Dated: New York, New York
           October 25, 2019

                                        **SO ORDERED.**

                                        **BARBARA MOSES**
                                        **United States Magistrate Judge**