

77 West Washington Street, Suite 1402, Chicago, IL 60602  Tel: 312-419-1008  |  Fax: 312-419-1025  www.flsalaw.com

October 29, 2019

*Via Electronic Court Filing System*
Hon. Barbara Moses, U.S.M.J
United States District Court
Southern District Of New York
500 Pearl Street
New York, NY 10007

      Re:   *Jocelyn Pettenato et al. v. Beacon Health Options, Inc. et al.*,
              Case No. 1:19-cv-1646 JPO-BCM

Dear Magistrate Judge Moses:

Pursuant to the Court's October 21, 2019 Order (ECF No. 61), the Parties jointly submit this letter "addressing (a) whether and to what extent the parties continue to disagree concerning defendants' production of documents and communications related to licenses, accreditation, and/or certifications held by defendants, and (b) whether and to what extent the parties continue to disagree concerning defendants' preservation obligations with regard to electronically stored information."

    **A.  Defendants' documents relating to accreditation, etc.**

**Plaintiffs' Position.** Defendants have agreed to produce or will produce the following accreditation documents for utilization management and case management employees:

- the initial documents Defendants submitted to the agencies prior to on-site audits in support of their renewals;
- any supplemental documents submitted prior to on-site audits in accordance with requests by the agencies;
- any final report provided by the agencies.

However, Defendants will not search for or produce the following documents:

- documents dated before the 3-year period
- any communications with agencies outside the formal process (the on-site audit and final report process)
- documents applicable to locations outside New York.

Plaintiffs believe the first 2 categories of these documents should be produced. First, as to documents dated before the 3-year period, if such documents bear on a licensing issue that

relates to Plaintiffs' exempt status, such a short temporal scope is inappropriate, especially since the Defendants have allegedly maintained the same illegal classification through the current date. See, e.g., *Henderson v. Holiday CVS, L.L.C.,* 269 F.R.D. 682, 691 (S.D. Fla. 2010) (in light of defendant's affirmative defense of good faith ordering production past versions of training program for a period of five (5) years prior to filing complaint); *Matysiak v. Spectrum Servs. Co.,* No. 3:10 CV 1841 CSH, 2014 WL 3819206, at *2 (D. Conn. Aug. 4, 2014). Second, there is no reason to distinguish formal versus informal communications. For example, if Defendants' sent an "informal" email to accreditation agency (URAC or NCQA) stating that licensing is not required for particular at-issue jobs, that is just as valuable and relevant as a communication exchanged during any so-called "formal process."

Finally, Plaintiffs do not seek "all documents" related to accreditation, but only documents related to the job duties and/or licensing requirements for the at-issue jobs.

**Defendants' Position**.

Defendants originally objected to Plaintiffs' request for accreditation documents on the grounds that the request is not proportional, is overbroad and unduly burdensome and the documents are not relevant and objected to the extent the documents are publicly available. After conferring with Plaintiffs, Defendants agreed to produce, and have produced, the applicable guides relating to the National Committee for Quality Assurance (NCQA) and Utilization Review Accreditation Commission (URAC) standards.

Plaintiffs continue to seek "communications" relating to Defendants' accreditations, arguing that any such communications may bear on a licensing issue that relates to Plaintiffs' exempt status. The only support Plaintiffs have provided for the relevance of such documents is the non-binding *Rego* decision out of the Eastern District of Wisconsin, which did not involve a discovery dispute about communications with accreditation agencies.

In *Rego*, the court considered whether workers' compensation utilization management nurses (a wholly different position than the positions at issue in this case) satisfied the professional exemption. *Rego v. Liberty Mut. Managed Care, LLC*, 367 F. Supp. 3d 849, 853, 862 (E.D. Wis. 2019). In doing so, the court described the accreditation standards applicable to the utilization review services provided by the defendant in that case as follows:

> The Utilization Review Accreditation Commission (URAC) is a nonprofit organization that issues accreditations to companies that conduct utilization review services focusing on quality and confidentiality. URAC is one of the largest accreditation organizations for workers' compensation. Some states require that companies conducting utilization reviews be URAC-accredited.

*Id.* at 853. In *Rego*, the court solely looked at URAC's accreditation requirements as evidence of the prerequisites for the utilization review work at issue in that case. *See id.* at 862. The court did not consider any communications the *Rego* defendant had with URAC or any accreditation agency, nor did the court conclude that defendant's belief regarding appropriate licensure requirements (e.g., the kind of "informal" email to an accreditation agency that plaintiffs seek in

this case) was relevant to what URAC required.  In fact, the court was not swayed by the extent to which the *Rego* defendant's practices went beyond the requirements of the applicable standard.

Given Plaintiffs' failure to establish relevance, Defendants should not be put to the burden of gathering communications with accreditation agencies.  Such a search imposes a heavy burden because multiple employees may have communicated with the accreditation entities about a wide variety topics that have nothing to do with employee classification. Defendants have not yet identified the number or list of possible email custodians.  In addition, search terms uncovering the information Plaintiffs seek about job duties and licensing requirements for the at-issue jobs would be difficult to craft.  Without reviewing all communications from all employees, Defendants would be unable to limit any search to this specific scope.  Even if Plaintiffs are proposing the use of the search terms "job duties" and "licensing requirements" along with the job titles at issue, the issue regarding identifying the custodians remains.

As to older accreditation documents, given the lack of relevance of <u>any</u> such documents, Defendants should not be put to the burden of collecting and producing older documents, particularly in the absence of any suggestion that the standards changed significantly prior to the three-year period.  Defendants are willing revisit their position and confer again with Plaintiffs if and when Plaintiffs can articulate, based on the three years' worth of documents that Defendants are agreeing to produce, a justification for production of documents from previous years.

### B.  Defendants' Preservation Obligations for ESI

The only issue that remains in dispute over Defendants' preservation of certain ESI is Plaintiffs' request that Defendants preserve VPN logs.

**Plaintiffs' Position**. Generally, a VPN log is a record of incoming and outgoing connections to a VPN server which may include: (a) a user's IP address, (b) the IP address of the VPN server a user connects to; (c) t*imestamps when a user connects and disconnects from a VPN*, and (4) the ability of the VPN provider to search and query all of the above. Plaintiffs contend that the VPN logs must be preserved because the logs may show when they, potential opt-in plaintiffs, and New York class members used Defendants' VPN to perform work for Defendants. Because this information goes to a core issue in the litigation – when employees worked and the number of hours worked – the information is plainly relevant. This is especially true inasmuch as Defendant claims it does not have other timekeeping records that show the number of hours that at-issue employees worked each week.

Defendant has confirmed during the conferral process that the VPN logs show login times, and it has not yet confirmed whether the logs identify the duration of the VPN connection. Because the VPN logs show time worked by Plaintiffs, the logs should be preserved.

Defendants' argument against preservation, that the logs need not be preserved because Defendants' VPN system allows persons to remain logged-in to the VPN continuously for up to 5 days and thus are inaccurate to determine the number of hours worked, misses the point. *First*, Defendants' argument goes to weight a jury might give the VPN logs, not whether the logs should be preserved at this point for discovery, and potential use in the future. *Second*, even if the VPN logs cannot be used to determine the start *and* end of a workday, the initial log-in

information may identify when an employee first commenced work. *Third*, as noted above, because Defendants do not have other records showing the number of hours employees worked in individual work weeks, Plaintiffs may prove their case with whatever evidence they can muster and by just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (where the employer's time records are inaccurate or incomplete, the employee's burden is met if he establishes his claim "as a matter of just and reasonable inference.") *Finally*, the fact that Defendants' VPN may allow a person to remain logged-in for 5 continuous days does not mean that actually ever occurred. Plaintiffs believe the VPN logs will show that employees logged-in and last logged-off each workday, and the times they did so.

**Defendants' Position**.

There is not a live dispute about this issue. Defendants already notified Plaintiffs that their VPN Log Collector, IBM QRADAR, is currently down and being rebuilt. Defendants anticipate that it will return to operation in the next week. Defendants already offered, on October 23, that when the program is up and running, Defendants will ask the vendor, IBM, whether the information Plaintiffs' seek is available.

As to the 5-day issue, Defendants notified Plaintiffs that the currently available VPN logs show log in times only, not log offs, and that the VPN session can stay connected up to 5 days. Thus, the current information that Defendants have about VPN logs supports the lack of relevance of the logs.

Sincerely,

| | |
|---|---|
| /s/ Maureen A. Salas | /s/ Hillary J. Massey |
| Douglas M. Werman | Barry J. Miller |
| Maureen A. Salas | Hillary J. Massey |
| Werman Salas P.C. | Seyfarth Shaw LLP |
| 77 West Washington, Suite 1402 | 2 Seaport Lane #300 |
| Chicago, Illinois 60602 | Boston, MA 02210 |
| Tel: (312) 419-1008 | bmiller@seyfarth.com |
| dwerman@flsalaw.com | hmassey@seyfarth.com |
| msalas@flsalaw.com | |
| | Maria Papasevastos |
| Travis M. Hedgpeth | Seyfarth Shaw LLP |
| The Hedgpeth Law Firm, PC | 620 Eight Avenue, 32nd Floor |
| 5438 Rutherglenn Drive | New York, NY 10018 |
| Houston, Texas 77096 | mpapasevastos@seyfarth.com |
| Tel: (5120 417-5716 | |
| travis@hedgpethlaw.com | Attorneys for Defendant |

Jack Siegel
Siegel Law Group PLLC
2820 McKinnon, Suite 5009

4

Dallas, Texas 75201
(214) 790-4454
jack@siegellawgroup.biz

Ravi Sattiraju
The Sattiraju Law Firm, P.C.
116 Village Blvd., Suite 200
Princeton, NJ 08540
(609) 799-1266
rsattiraju@sattirajulawfirm.com

*Attorneys for Plaintiffs and Others
Similarly Situated*