UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| BETTY ROSE BARSA, et al., | |
| Plaintiffs, | 19-CV-1646 (JPO) (BCM) |
| -against- | **ORDER** |
| BEACON HEALTH OPTIONS, INC., et al., | |
| Defendants. | |

**BARBARA MOSES, United States Magistrate Judge**.

Now before the Court is the parties' joint letter-motion dated May 29, 2020 (Joint Ltr.)

(Dkt. No. 137), seeking approval of their proposed FLSA Settlement and Release Agreement

(Agreement) (Dkt. No. 137-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199

(2d Cir. 2015). The Agreement requires defendants Beacon Health Options, Inc., Beacon Health

Strategies LLC, and ValueOptions Federal Services, Inc. (collectively, Beacon Health) to pay a

total of $99,180.66 to settle the "misclassification" claims asserted under the Fair Labor Standards

Act (FLSA) and state law by the 41 Participating Plaintiffs who signed the Agreement. Ag. ¶ 5.

Named plaintiff Betty Rose Barsa will receive a $1,000 service award, and plaintiffs' counsel

request $33,333.33 in attorneys' fees, plus $10,035.90 to reimburse their litigation expenses, which

would leave $54,811.43 to be distributed among the Participating Plaintiffs in amounts ranging

from a low of $232.70 to a high of $4489.36. *See* Ag. ¶ 5 & Ex. A; Joint Ltr. at 5-6.[1]

---

[1] At the time of settlement there were 43 plaintiffs in this action, including two named plaintiffs –
Barsa and Francis Bax – and 41 others, many of whom opted in pursuant to the FLSA, 29 U.S.C.
§ 216(b). *See* Ag. at 1; Joint Ltr. at 2. If all 43 plaintiffs signed the Agreement, Beacon Health
would have been obligated to pay a total of $100,000 to settle their claims. *See* Ag. ¶ 5; Joint Ltr.
at 2. In the end, 41 of the 43 signed. *See* Ag. at 8-9; Letter dated June 5, 2020 (Pl. Ltr.) (Dkt. No.
138), at 1 &. Ex. 1. The two plaintiffs who did not sign – Theresa Gay and Jill Law – have con-
sented to the dismissal of their claims without prejudice. Pl. Ltr. at 1. Under the Agreement, "[t]he
settlement funds allocated to any Plaintiff who does not join the settlement will be retained by
Beacon." Joint Ltr. at 3; *see also* Ag. ¶ 7. Thus, Beacon Health will retain the $819.34 that would

All of the Participating Plaintiffs will release Beacon Health from any "claims that were raised or could have been raised in the Complaint for Defendants' alleged misclassification of the Participating Plaintiffs and Defendants' alleged failure to pay overtime wages to the Participating Plaintiffs under the Fair Labor Standards Act or analogous state or local law." Ag. ¶ 3. In addition, named plaintiff Barsa will release defendants "from all claims of any type to date, known or unknown, suspected or unsuspected, arising out of anything to do with her employment, the end of her employment, *or any other matter*." Ag. ¶ 2 (emphasis added). There is no reciprocal release running in Barsa's favor. The Agreement also contains a "non-publicity" clause under which plaintiff Barsa and plaintiffs' counsel agree that they "shall not post or otherwise publicize any allegations in the Lawsuit, the settlement amounts outlined in this Agreement, or other terms and conditions of the settlement, including the discussions, conversations, and negotiations leading to the execution of it, on any blogs, websites, or social media sites or in the media." *Id*. ¶ 8. There is no reciprocal obligation restricting defendants' communications.

The Agreement contains a severability clause, under which any provision found to be "illegal, invalid, or unenforceable by a court of competent jurisdiction" will be "deemed severed" without affecting the remining provisions. Ag. ¶ 9(i). The severability clause, however, does not apply to ¶¶ 2 and 3 – the release provisions. *Id*.

After careful consideration of the parties' submissions, the Court concludes that the Agreement cannot be approved, in its present form, under *Cheeks*. The settlement consideration to be paid to the Participating Plaintiffs, though modest, may well be fair and reasonable given the significant obstacles to recovery that they will face should they proceed with litigation. However,

---

have been allocated to Gay and Law (*see* Ag. Ex. A), and will pay a reduced total of $99,180.66 to settle the claims of the remaining 41 Participating Plaintiffs.

the parties have not provided the Court with the information required to make that determination, such as a reliable estimate of their "total potential recovery." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n. 12 (2d Cir. 2020). Similarly, it is difficult to evaluate the fairness of the proposed attorneys' fee award – which represents approximately 37% of the net settlement proceeds but less than 10% of the figure that plaintiffs' attorneys present as their lodestar – without the underlying time records, which counsel inexplicably failed to submit, and without the information required to determine "the degree of success obtained." *Id.* at 606 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Moreover, under well-settled precedent in our circuit, the Court cannot approve the broad, one-way general release required from plaintiff Barsa, nor the non-publicity clause that would bind both Barsa and plaintiffs' attorneys.

## I.    BACKGROUND

Plaintiffs are or were salaried "care management employees," employed by Beacon Health "to perform utilization review and case management functions to reduce the cost of medical care." Second Amend. Compl. (SAC) (Dkt. No. 121) ¶¶ 2-3. Plaintiffs allege that they regularly worked over 40 hours per week but were not paid for their overtime hours because Beacon Health misclassified them as "professionals" exempt from federal and state overtime laws. SAC ¶¶ 4-10. Although plaintiffs were licensed nurses (or other licensed health professionals), their job duties "did not involve providing traditional nursing care in a clinical setting" and – they alleged – did not require the degree of discretion and independent judgment required to classify them as exempt professionals pursuant to the FLSA, 29 U.S.C. § 213(a)(1), or comparable provisions of state law. SAC ¶¶ 10, 42-46.

On June 21, 2019, a group of 19 plaintiffs (then led by named plaintiffs Jocelyn Pettenato, Anitra Stewart, and Law), who worked for Beacon Health in eight different states, sought

conditional certification of their FLSA claims as a nationwide collective action. (Dkt. No. 37.) On October 25, 2019, this Court granted the motion with respect to employees who lived or worked in New York State, but concluded that it "may not exercise specific personal jurisdiction over the FLSA claims of out-of-state plaintiffs against these defendants, none of which is subject to general personal jurisdiction in New York," and consequently declined to certify a nationwide collective action. *Pettenato v. Beacon Health Options, Inc*., 425 F. Supp. 3d 264, 270 (S.D.N.Y. 2019). Thereafter, Pettenato and Stewart dismissed their claims (Dkt. No. 94), and Law (who did not reside or work in New York) was replaced on the caption of this action by Barsa and Bax, who filed the SAC on February 5, 2020, asserting claims under the FLSA and New York law. SAC ¶¶ 11-12.[2] The parties engaged in document discovery, and Barsa sat for deposition. Joint Ltr. at 2.

Meanwhile, on January 5, 2020, the Second Circuit held that registered nurses employed by an insurance company as "appeals nurse consultants" to perform non-clinical "utilization reviews" were properly classified as exempt professionals. *See Isett v. Aetna Life Ins. Co*., 947 F.3d 122, 131-32 (2d Cir. 2020) (noting that registered nurses "generally meet the duties requirements for the learned professional exemption" and rejecting Isett's claim that "it is only in the performance of traditional clinical duties . . . that endows registered nurses with a status we describe as 'professional.'"). The parties "engaged in settlement discussions in light of the *Isett* decision," which Beacon Health believed to be "fatal to Plaintiff's claims in this action," Joint Ltr. at 2, and soon thereafter reached an agreement in principle. *Id*.

---

[2] In addition to Law, the Participating Plaintiffs include seven others who lived or worked for Beacon Health outside of New York (the Out-of-State Plaintiffs). *See* Ag. at 1; Joint Ltr. at 2 n.3. At the time of settlement, the claims of the Out-of-State Plaintiffs were the subject of competing motions to dismiss (Dkt. No. 80) and to transfer (Dkt. No. 82). Beacon Health has agreed to "waive personal jurisdiction" over the claims of all eight Out-Of-State Plaintiffs "for the purpose of approval and enforcement of the Parties' settlement only." Ag. ¶ 7.

The parties have consented to my jurisdiction, pursuant to 28 U.S.C. § 636(c), for determination of the instant motion.  (Dkt. No. 140.)

## II.  ANALYSIS

### A.    Standards

In light of the "unique policy considerations" underlying the FLSA, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206 (noting the "potential for abuse" flowing from "highly restrictive confidentiality provisions," overbroad releases, and fee provisions that benefit plaintiffs' attorneys at the expense of plaintiffs themselves). The purpose of the judicial review process is to ensure "that the agreement is fair and reasonable to the plaintiff." *Seck v. Dipna Rx, Inc.*, 2017 WL 1906887, at *3 (S.D.N.Y. May 8, 2017). Because *Cheeks* itself did not "define the contours of the approval analysis or protocols it envisioned," most district courts within our circuit turn to the multi-factor test set out in *Wolinsky v. Scholastic, Inc.,* 900 F. Supp. 3d 332 (S.D.N.Y. 2012), "to evaluate whether an FLSA wage and hour settlement [is] 'fair and reasonable.'" *Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017); *see also Arango v. The Scotts Company*, *LLC*, 2019 WL 117466, at *2-3 (S.D.N.Y. Jan. 7, 2019) (collecting cases).

*Wolinsky* teaches that "a court should consider the totality of the circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010)).

**B.      Settlement Consideration**

This Court has no concerns about the second, third, fourth, and fifth *Wolinsky* factors, and concurs with the parties, *see* Joint Ltr. at 4, that plaintiffs face serious litigation risks should this action move forward.[3] However, the first and arguably most significant *Wolinsky* factor – the "range of possible recovery," against which plaintiffs' actual recovery through settlement must be evaluated – cannot be determined based on the record now before the Court.

Plaintiffs' attorney Maureen A. Salas of Werman Salas PC (the Firm) estimates that "the gross settlement amount" (before deductions for attorneys' fees, costs, and the service award to Barsa) represents "65% of the overtime wages owed to Plaintiffs if three additional hours are added to the regular hours they were paid for working in each week [plaintiffs] worked during their applicable limitations period." Salas Decl. (Dkt. No. 137-2) ¶ 20; *see also* Joint Ltr. at 4 (same). Similarly, each plaintiff's "ratable share" of the settlement dollars was calculated using a formula which added "three (3) additional work hours" to "the hours the Plaintiff was paid for working" each week and then used those adjusted hours to compute that plaintiff's claim for unpaid overtime wages at one and one-half times her regular rate. Ag. ¶ 5. If $99,180.66 (the gross amount that Beacon Health will pay to the 41 Participating Plaintiffs) represents 65% of the overtime wages allegedly owed, then the full amount of those overtime wages is $152,585.63.

"Precedent confirms that securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate." *Khan v. Dunwoodie Gas Station, Inc.*, 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020). Indeed, where – as here – FLSA plaintiffs face significant legal

---

[3] Given this Court's decision in *Pettenato*, the eight Out-of-State Plaintiffs cannot proceed in this forum at all. The remaining Participating Plaintiffs are free to press ahead in this Court, but will likely be met with a stiff challenge to their misclassification claims based on the Second Circuit's holding in *Isett*. Moreover, "Defendants contend Plaintiffs were subject to differences in the work they performed, which could result in decertification of the collective." Joint Ltr. at 4.

and/or evidentiary challenges, the courts do not hesitate to approve settlements representing much lower percentages of plaintiffs' "optimistic, best-case scenario." *Id.* (collecting cases); *see*, *e.g.*, *Garcia v. Cloister Apt. Corp.*, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019) (approving FLSA settlement representing approximately "28% of [plaintiffs'] total alleged damages" as "reasonable" in light of various "obstacles to recovery"); *Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (approving FLSA settlement that would net the plaintiff "approximately 20 percent of the maximum possible recovery amount" where facts were disputed); *Felix v. Breakroom Burgers & Tacos*, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving FLSA settlement representing less than 25% of plaintiff's "maximum possible recovery," where such recovery was "far from inevitable," making the decision to forgo the burden and expense of trial "clearly reasonable").[4]

Nothing in the record before this Court, however, supports the three-extra-hours-per-week assumption that underlies counsel's 65% estimate. There is no assertion (or concession) in the Joint Letter or the Salas Declaration that plaintiffs' "best case scenario" would be a damages award based on three extra hours of work per week across the collective. In their pleadings, plaintiffs allege that they regularly worked "over 40 hours" per week, SAC ¶¶ 6, 50-53, but do not specify how many hours they actually worked. In the declarations submitted in support of their collective certification motion, only a few plaintiffs provided more specific estimates of their work hours. Those who did

---

[4] In *Kahn*, *Garcia*, *Gervacio*, and *Felix*, the denominator used by the court (whether described as the "total, potential FLSA recovery," the "best case scenario," the "total alleged damages," or the "maximum possible recovery") included "both base and liquidated damages." *Khan*, 2020 WL 1166180, at *3; *see also Garcia*, 2019 WL 1382298, at *2; *Gervacio*, 2019 WL 330631, at *1; *Felix*, 2016 WL 3791149, at *2. A plaintiff who prevails on an FLSA overtime claim is ordinarily entitled to recover liquidated damages equal to 100% of her actual unpaid wages. *See* 29 U.S.C. § 216(b); SAC ¶¶ 131, 140 (demanding unpaid overtime wages, liquidated damages, interest, attorneys' fees, and costs). Thus, "65% of the overtime wages owed" to the plaintiffs, Joint Ltr. at 4, is equivalent to 32.5% of the same plaintiffs' "total potential recovery."

(including some who are not now Participating Plaintiffs) gave varying figures at or above 45 hours per week.[5] The Agreement itself carefully notes that the three extra hours were added "[f]or settlement purposes only." Ag. ¶ 5.

"Determining whether an FLSA settlement is fair and reasonable is 'an information intensive undertaking.'" *Cabrera v. CBS Corp.*, 2019 WL 502131, at *6 (S.D.N.Y. Feb. 8, 2019) (quoting *Camacho v. Ess-A-Bagel, Inc.*, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014)); *accord Arango*, 2019 WL 117466, at *2. Where, as here, the parties represent to the Court that the settlement consideration is fair and reasonable because it represents a certain percentage of the wages "owed," they must support their calculation with something other than an unsourced assumption made "for settlement purposes only." *See Arango*, 2019 WL 117466, at *3 (S.D.N.Y. Jan. 7, 2019) ("Without any explanation as to how the Parties determined that $29,566.00 constitutes over 100% of Plaintiff's potential recovery, the Court cannot determine whether the settlement sum is fair and reasonable."); *Gomes v. Coppola's of New York, Inc.*, 2019 WL 6211495, at *1 (S.D.N.Y. Nov. 21, 2019) (refusing to approve FLSA settlement where "the parties did not provide the basis for the [potential] recovery figure" and therefore the court had "no sense of how the parties arrived at the settlement figures"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015) ("[a]t a minimum," the parties must explain "the bases of [their] estimates of plaintiffs' maximum possible recovery").

It may well be that the parties have a sound basis for their implicit representation that the aggregate amount of the unpaid overtime wages owed to the Participating Plaintiffs (if indeed they

---

[5] *See* Dannahower Decl. (Dkt. No. 38-3) ¶ 7 ("I routinely worked between 45 and 60 hours per week"); Prachar Decl. (Dkt. No. 38-4) ¶ 3 ("at least 45 hours per week"); Schlett Decl. (Dkt. No. 38-9) ¶ 7 ("50-60 hours per week"); Law Decl. (Dkt. No. 38-10) ¶ 4 ("50-55 hours per week"); Pettenato Decl. (Dkt. No. 38-11) ¶ 6 ("at least 45 hours per week"); Kelly Decl. (Dkt. No. 38-13) ¶ 6 ("at least 50 hours per week"); Alvord Decl. (Dkt. No. 38-14) ¶ 6 ("at least 45 hours per week").

were misclassified) would be $152,585.63. "As it stands, however, the current submission is inadequate." *Nights of Cabiria*, 96 F. Supp. 3d at 177.

### C.    Attorneys' Fees and Costs

Plaintiffs' counsel request an award of attorneys' fees in the amount of $33,333.33 (described as "one-third of the gross settlement amount") and litigation expenses in the amount of $10,035.90. Joint Ltr. at 5.[6] Attorney Salas explains that counsel "undertook the representation on a purely contingent basis," at the rate of 40%, but "voluntarily reduced the contingency fee from 40% to one-third" for purposes of settlement. Salas Decl. ¶¶ 25, 28-29. Plaintiffs urge the Court to approve the proposed award of fees and costs as "reasonable considering the time and labor plaintiffs' counsel devoted to this case and this district's general trend of awarding a one-third percentage in a wage and hour settlement." Joint Ltr. at 5-6.

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Wolinsky*, 900 F. Supp. 2d at 336. The "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained." *Fisher*, 948 F.3d at 606 (quoting *Farrar*, 506 U.S. at 114).[7] Subject to that directive,

---

[6] Because only 41 of the 43 plaintiffs signed the Agreement, the gross settlement amount will actually be $99,180.66. One-third of that amount is $33,060.22.

[7] In *Fisher*, the gross amount of the settlement was $25,000, of which plaintiffs' counsel, the Lee Litigation Group (LLG), proposed to retain $23,000 in attorneys' fees and expense reimbursement, leaving $2000 for the plaintiff himself. *Fisher*, 948 F.2d at 598. The district court approved the settlement after reducing the fee award to $8250 (33% of the total settlement) and reallocating the balance to plaintiff Fisher, reasoning that "as a matter of policy, 33% of the total settlement amount – or less – is generally the maximum fee percentage which is typical and approved in FLSA cases." *Id*. at 602. On appeal, the Second Circuit held that while the "proposed split . . . understandably gave the district court pause," it "erred in presuming a 33% limit on attorneys' fees in FLSA set-tlements," and further erred in "rewriting the proposed settlement agreement" rather than simply rejecting the agreement, or giving the parties "an opportunity to revise it." *Id*. at 602, 605. The Court of Appeals remanded the case with instructions to "take into account that an award of $11,170 would give Fisher complete recovery in this litigation," that is, "100% of [his] possible overtime wages and statutory damages." *Id*. at 607. Thereafter, the district court approved the

"[i]t is within a court's discretion whether to award attorneys' fees based on either the lodestar method or the percentage of the settlement fund." *Reinoso v. Cipriani*, 2019 WL 2324566, at *2 (S.D.N.Y. May 30, 2019) (collecting cases). When analyzing the reasonableness of the fee – under either method – the court "should be guided by the following factors: '(1) counsel's time and labor; (2) the case's magnitude and complexities; (3) the risk of continued litigation; (4) the quality of representation; (5) the fee's relation to the settlement; and (6) public policy considerations.'" *Id.* (quoting *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *2 (S.D.N.Y. Mar. 20, 2014)).

Here, for the reasons explained above, this Court lacks the information required to evaluate the "degree of success" that counsel obtained for the Participating Plaintiffs, and therefore cannot pass on the reasonableness of the proposed fee award. *Fisher*, 948 F.3d at 606.

Moreover, plaintiffs failed to submit their counsel's "time and expense records," notwithstanding that this Court expressly directed them to do so. (Dkt. No. 135.) "In this circuit, a proper fee request 'entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done.'" *Nights of Cabiria*, 96 F. Supp. 3d at 181 (quoting *Wolinsky*, 900 F. Supp. 2d at 336); *accord Fisher*, 948 F.3d at 600; *Arango*, 2019 WL 117466, at *5. These records are required even where, as here, counsel seek a fee award calculated as a percentage of the settlement fund, because "[d]istrict courts are encouraged to 'cross-check' the percentage fee requested against counsel's 'lodestar.'" *Reinoso*, 2019 WL 2324566, at *2 (collecting cases); *see also Pinguil v. We are all Frank, Inc.*, 2018 WL

---

$25,000 settlement with a new allocation: $4,733.60 to LLG to reimburse its expenses; $9,096.30 to LLG as attorneys' fees; and $11,170 to Fisher. *See* Decision and Order Approving Settlement, *Fisher v. SD Protection Inc., et al.*, No. 17-CV-2229 (RMB), ECF No. 116 (S.D.N.Y. June 4, 2020), ¶¶ 3-5.

2538218, at *5 (S.D.N.Y. May 21, 2018) (courts "use the lodestar to 'cross check' a seemingly reasonable request for an award calculated as a percentage of the settlement fund").

Expenses must also be documented. *See Fisher*, 948 F.3d at 601-02 (approving expenses to the extent "documented . . . in the receipts and invoices submitted by counsel"); *Callari v. Blackman Plumbing Supply, Inc.*, 2020 WL 2771008, at *17 (E.D.N.Y. May 4, 2020) (recommending that no expenses beyond the filing fee be awarded where counsel "fail[ed] to provide the underlying documentation such as invoices, receipts or other documentary proof"), *report and recommendation adopted,* 2020 WL 2769266 (E.D.N.Y. May 28, 2020).

According to attorney Salas, eleven of the Firm's attorneys, paralegals, and "administrative staff members" spent 1017.28 hours litigating this action on plaintiffs' behalf, at hourly rates ranging from $700 (for the Firm's managing shareholder) to $150 (for three otherwise unidentified timekeepers) resulting in a total lodestar of $425,735.80. Salas Decl. ¶ 31. However, this information is presented in summary chart form – giving the total number of hours expended by each timekeeper – accompanied by a single paragraph summarizing the work performed by those eleven timekeepers and by three other law firms "working on this case." *Id.* ¶¶ 31-33.[8] Plaintiffs did not submit any of the underlying time or billing records. Nor did they submit any documents evidencing the $10.035.90 in expenses – listed in summary fashion in the Salas Declaration, *id.*

---

[8] That paragraph reads, in full: "Among other work performed, Plaintiffs' Counsel incurred fees preparing and reviewing the pleadings, participating in the 26(f) conference, drafting Fed. R. Civ. P. 26(a)(1) disclosures, attending the scheduling conference, briefing Plaintiffs' motion for conditional certification, attending the hearing on Plaintiffs' motion for conditional certification, issuing notice pursuant to the FLSA, communicating with Plaintiffs, drafting written discovery answers for the plaintiffs, reviewing Defendants' discovery responses, reviewing thousands of documents produced by Defendants, conferring over discovery disputes, briefing Plaintiffs' Motion to transfer and Defendants' motion to dismiss the claims of the non-NY plaintiffs, amending the Complaint, producing Plaintiff Barsa for a deposition, and negotiating the settlement." Salas Decl. ¶ 33.

¶ 44 – for which they seek reimbursement.[9] On the present record, therefore, the Court cannot approve either the proposed fee award or the expense reimbursement sought by counsel. *See Nights of Cabiria*, 96 F. Supp. 3d at 182 (fee request unaccompanied by substantiating evidence "cannot be approved").

### D.    The One-Way General Release

The Agreement includes a one-way, broad-form, general release in which plaintiff Barsa would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Nights of Cabiria,* 96 F. Supp. 3d at 181.  "In the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers," such a release is impermissible. *Id.* As Judge Kaplan explained in *Nights of Cabiria*, "The parties have every right to enter into a settlement that waives claims relating to the existing suit in exchange for a settlement payment. But the Court will not countenance employers using FLSA settlements to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." *Id. See also Cheeks*, 796 F.3d at 206 (citing the overbroad release in *Nights of Cabiria* as an example of the "potential for abuse" in FLSA settlements). Thus, in FLSA cases, "courts in this District routinely reject" such releases. *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (collecting cases); *accord Alvarez v. Schnipper Restaurants LLC*, 2019 WL 5682633, at *3 (S.D.N.Y. Nov. 1, 2019) (collecting cases).

Some judges within our district, including the undersigned magistrate judge, have approved *mutual* general releases, in the non-class context, where the releasing plaintiff has "settle[d] her

---

[9] Even the summary list suggests that counsel's calculations may not be entirely reliable. The first expense listed is $600 for "filing fees." The filing fee in this district is $400. (Dkt. No. 1.)

case for more than she could likely win at trial" under the FLSA and is no longer an employee of the defendant, thus "eliminating the danger that the release was obtained through improper job-related pressure." *Plizga v. Little Poland Rest. Inc.*, 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016). *See also*, *e.g.*, *Weng v. T&W Rest., Inc.,* 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP,* 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016); *Souza v. 65 St. Marks Bistro,* 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015). Even where only named plaintiffs are affected, however – and even when they are no longer employed by the defendants with which they are settling – judges in this district, including the undersigned magistrate judge, routinely reject one-way general releases as part of our duty to "police unequal bargaining power between employees and employers." *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 344 (S.D.N.Y. 2016) (quoting *Flood v. Carlson Rests. Inc.,* 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015)); *accord Schnipper Restaurants*, 2019 WL 5682633, at *3 ("Here, because the Named Plaintiff's release far exceeds the scope of the FLSA, this Court finds that it cannot preliminarily approve the Settlement Agreement.").

The sweeping release that defendants seek from Barsa would require her to give up any and all claims (known or unknown, suspected or unsuspected) against all three defendants, "and all of their divisions, parents, subsidiaries, affiliates, predecessors, successors, and other related entities, and their past and present shareholders, owners, directors, insurers, officers, agents, employees and attorneys," for " pay/compensation benefits," "compensatory/emotional/distress damages," breach of contract, "intellectual property or other proprietary rights," "unlawful or tortious conduct," including assault and battery, defamation, and "safety" or "public policy violations," "discrimination" of any and every sort, and "any participation in any class or collective action" against the defendants or the other persons or entities included in the release, no matter the

nature of the claim. Ag. ¶ 2. As to Barsa, therefore, defendants unabashedly propose to use the Agreement "to erase all liability whatsoever in exchange for partial payment of wages allegedly required by statute." *Nights of Cabiria,* 96 F. Supp. 3d at 181. Moreover, they seek to "erase" that liability not only for themselves, but for a web of entities and individuals that may be only remotely related to Barsa's former employer (for example, an individual who happens to be a current shareholder of an entity that was formerly affiliated with one of the named defendants) and whose identity – and potential liability to her – she could not possibly know. Even if some form of reciprocal release ran from defendants to Barsa, therefore, this Court could not approve ¶ 2 of the Agreement as fair and reasonable. *See Poko-St. Ann*, 176 F. Supp. 3d at 344 (rejecting similar release as "beyond what the law permits"); *Souffrant v. 14-15 Mertens Place Corp.*, 2020 WL 1166231, at *2 (S.D.N.Y. Mar. 11, 2020) (quoting *Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018)) (rejecting seemingly mutual general releases that were "not mutual in terms of their breadth or extent," in that plaintiff's release "appear[ed] to extend to numerous persons and entities only tenuously connected to this action, and purport[s] to release them not only from claims arising out of that connection but also from wholly unrelated claims").

According to the parties, the release demanded of plaintiff Barsa is "appropriate because she is eligible to receive a service award and because her attorneys have had sufficient opportunity to, and have, discussed with her the implications of that release and whether she has other viable claims against Beacon [Health]." Joint Ltr. at 5. In this Court's view, however, an extra $1000 (which in Barsa's case would increase her settlement payment from $1,916 to $2,916) cannot be sufficient to mitigate the "potential for abuse," *Cheeks*, 796 F.3d at 206, inherent in unilateral and

overbroad general releases.[10] If it were, unscrupulous FLSA defendants could easily end-run the pronounced "[j]udicial distaste for overbroad releases" in FLSA settlements, *Poko-St.Ann*, 176 F. Supp. 3d at 344, merely by designating some portion of the agreed-upon settlement payment to the designated plaintiffs as a "service award." Similarly, the unexceptional fact that Barsa's attorneys "discussed" the release and its implications with her cannot be an independent reason to approve that release as "fair and reasonable" if its terms cannot be so characterized.

E.    **The Non-Publicity Clause**

The Court likewise cannot approve the non-publicity clause contained in ¶ 8 of the Agreement, which prohibits plaintiff Barsa from discussing this case, the underlying facts, or the settlement on any blogs, websites, or social media, or otherwise "in the media." The clause does not only restrict Barsa; it also muzzles her lawyers, and thereby, indirectly, muffles the voices of the other settling plaintiffs, on whose behalf those lawyers would otherwise be free to speak. Like the general release, the non-publicity clause is unilateral, leaving Beacon Health at liberty to say what it likes, in any forum it chooses, about Barsa and her lawsuit. In this respect the non-publicity clause now before the Court is more troubling than the bilateral restrictions rejected in *Chung v. Brooke's Homecare LLC*, 2018 WL 2186413, at *2 (S.D.N.Y. May 11, 2018), in which Judge Nathan noted that, "by characterizing social networking sites and blogs as media, the provision sweeps a great deal of communications within its ambit." *See also Cortes v. Bronx Bar & Grill, LLC,* 2019 WL 6318430, at *2 (S.D.N.Y. Nov. 25, 2019) (rejecting "prohibition on sharing

---

[10] *Cf. Bondi v. DeFalco*, 2020 WL 2476006, at *6 (S.D.N.Y. May 13, 2020) (preliminarily approved a wage and hour class action settlement which included a broad general release to be executed by the Class Representatives in exchange for service awards ranging from $2000 to $10,000).

information connected to the existence or substance of the Agreement on social media" because "it frustrates the FLSA's purposes").

Provisions that significantly limit an FLSA plaintiff's ability to communicate truthful information about an FLSA settlement (or the underlying lawsuit) are "contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Lopez v. Ploy Dee*, *Inc.*, 2016 WL 1626631, at *3 (S.D.N.Y. Apr. 21, 2016); *see also Camacho v. Ess-A-Bagel, Inc.*, 2015 WL 129723, at *2 (S.D.N.Y. Jan. 9, 2015) ("non-disclosure provisions prevent workers from using a win to publicize both the wrongdoing of the employer and the possibility of success more generally") (internal quotation marks omitted). Absent a "compelling justification," which the parties here have failed to provide, the non-publication clause in ¶ 8 of the Agreement violates the public policy animating the FLSA and is therefore unenforceable.

## III.   CONCLUSION

For the reasons set forth above, the Court cannot approve the Agreement as fair and reasonable on the present record, or as written.   While the severability clause at ¶ 9(i) arguably authorizes the Court to simply strike the non-publicity provision at ¶ 8, that power does not extend to the overbroad general release set forth in ¶ 2.   Moreover, the parties must augment the record in order to establish that the economic terms of the Agreement are fair in light of the degree of success achieved and support the request for an award of fees and expenses to plaintiffs' counsel.

The parties' letter-application for approval of the Agreement is therefore DENIED without prejudice to renewal once the parties have (1) made a showing that the settlement is fair and reasonable in light of the degree of success obtained, measured against plaintiffs' potential total

recovery at trial; (2) supported the request for attorneys' fees and expenses with the underlying time records and expense documentation, properly authenticated; (3) excised or significantly modified the general release provision applicable to plaintiff Barsa; and (4) excised or significantly narrowed the non-publicity provision applicable to Barsa and to plaintiffs' counsel.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 139.

Dated:  New York, New York
            July 10, 2020                                    **SO ORDERED**.

                                                                  _____

                                                                  **BARBARA MOSES**
                                                                  **United States Magistrate Judge**