UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
BETTY ROSE BARSA, FRANCIS BAX, :
AND ALL OTHERS SIMILARLY :
SITUATED, :
                             :
             Plaintiffs, :
                             :
    -against- :  Civil Action No. 1:19-cv-1646 JPO-BCM
                             :
BEACON HEALTH OPTIONS, INC., :
BEACON HEALTH STRATEGIES LLC, :
AND VALUEOPTIONS FEDERAL :
SERVICES, INC., :
             Defendants.
------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF AGREED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT UNDER THE FAIR LABOR STANDARDS ACT**

**I.    Introduction**

The Parties respectfully renew their request to approve their Settlement Agreement (ECF No. 139-1). The Court gave four reasons in its July 10, 2020, Order why it could not approve the Settlement on the record provided to the Court or as written. ECF No. 141. The Court directed the Parties to:

1. Show that the settlement is fair and reasonable in light of the degree of success obtained, measured against plaintiffs' potential total recovery at trial;

2. Support the request for attorneys' fees and expenses with the underlying time records and expense documentation, properly authenticated;

3. Excise or modify the general release provision to plaintiff Barsa; and

  4. Excise or narrow the non-publicity provision applicable to Barsa and to plaintiffs' counsel.

*Id*. at 16-17.

The Parties address each of these issues in turn.[1] To the extent Your Honor has any additional questions or concerns about these issues, the Parties request a telephonic conference.

## II. The Settlement Amount Compared to the Potential Total Recovery

One of the factors courts look at in determining whether a settlement is fair, reasonable, and adequate is the plaintiffs' recovery in comparison to their "potential total recovery." *Khan v. Dunwoodie Gas Station, Inc.*, No. 19-CV-5581 (KMK), 2020 WL 1166180, at *3 (S.D.N.Y. Mar. 10, 2020).

"The determination of whether a given settlement amount is reasonable in light of the best possible recovery does not involve the use of a mathematical equation yielding a particularized sum." *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015). Instead "there is a range of reasonableness with respect to a settlement, a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*.[2]

Here, the result is fair and reasonable in part because the settlement must be considered in light of the very real risk that the Second Circuit's decision in *Isett v. Aetna Life Ins. Co*., No. 18-3271-CV, 2020 WL 201682 (2nd Cir. Jan. 14, 2020) could reduce the collective's recovery to

---

[1] The Court stated that outside of these issues, the Court had no concerns about the Settlement Agreement meeting the standard of approval. ECF No. 141 at 6.
[2] *See also Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886, 896 (6th Cir. 2019) (evaluating whether settlement was fair, reasonable and adequate despite "lack of records for many class members").

zero. In *Isett*, the Second Circuit affirmed summary judgment for the employer, Aetna, on the application of the professional exemption to a utilization management position similar to Plaintiffs, holding that the plaintiff (an RN who reviewed denials of claims for medical services) was an exempt professional employee). *Id.* In the wake of this development in the law jeopardizing any recovery for any member of the collective, Plaintiffs' Counsel successfully negotiated a concrete benefit for all members of the collective. *See Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011 (AJN), 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (approving settlement where "A distribution of the possible outcomes at trial, factoring in the risks associated with proving [plaintiff's] claims, would therefore likely be clustered at the lower end of the spectrum of possible recoveries.").

Defendants paid Plaintiffs a salary for all hours they worked, including hours worked over forty (40) a week. If Plaintiffs prevail on liability, they will be entitled to one-half times their regular rate for all hours they worked in excess of forty (40) hours in individual work weeks during their limitations period. *Thomas v. Bed Bath & Beyond, Inc.,* 961 F.3d 598, 612 (2d Cir. June 15, 2020). Plaintiffs' maximum potential damages would be simple to compute had Defendants recorded the number of hours Plaintiffs worked, but Defendants did not maintain time records. Plaintiffs requested documents from Defendants in discovery that could serve as a proxy for hours worked, including "computer sign-in data, case management system data, facsimile logs, telephone logs and reports, time-stamped entries or documents, email meta data, time studies, security logs, invoices, expense reports, bills, work schedules, and other documents." Ex. 1, Declaration of Maureen A. Salas ¶ 3. The case was resolved prior to either party incurring the tremendous costs associated with an ESI search and production. *Id*. In

3

addition, Defendants believe that such records do not accurately reflect any employee's hours worked.

In the absence of time records and other records that could serve as a proxy for time worked, Plaintiffs are not in a position to determine the number of hours they worked each week with precision. *Id.* ¶ 4. Plaintiffs are, however, able to determine a possible range of recovery, through the following sources:

- The payroll records Defendants produced for Plaintiffs;

- Plaintiff Barsa's testimony in a deposition about the hours she worked;

- Plaintiffs' Counsel's investigation and communication with Plaintiffs;

*Id.*

The payroll records Defendants produced do not identify the hours Plaintiffs worked, but they do identify the pay periods in which plaintiffs took days off work because of holidays, vacation, and sick leave. Plaintiffs' damage calculations account for the individual weeks each Plaintiff worked less than a full work week. Settlement Agreement § 5 (ECF No. 139-1).

Named Plaintiff Barsa was the only member of the collective to undergo a deposition. She testified that she typically began work between 7 and 8 am and ended at 6:30 pm, without a lunch break. Ex. 2, Deposition of Plaintiff Barsa at 303:3-309:20. She also worked around 4 hours each weekend. *Id*. at 307:14-18. This amounts to a maximum of 61.5 hours per week.

Plaintiff Barsa testified, however, that she worked more hours than other employees. For example, she testified that she and one other employee were "the first two there" in the office each morning. *Id*. at 304:17-22. She said others came in at this hour "sporadically." *Id*. at 304:24.

4

While Barsa generally worked through lunch, she testified that "it varies" as to whether others would take a lunch break. *Id*. at 310:9.

Plaintiffs' Counsel independently investigated the hours worked by members of the collective, through both individual conversations and a collective-wide survey that was sent to plaintiffs in February 2020. Ex. 1, Salas Decl. ¶ 5. The survey elicited responses regarding the typical range of hours 17 plaintiffs worked:

- **four** reported working at or below 40 hours in a typical week;
- **one** reported working a minimum of 40 hours;
- **two** reported working 40-45 hours in a typical week;
- **five** reported working 45-50 hours in a typical week;
- **one** reported working 45-55 hours in a typical week;
- **three** reported working 40-60 hours in a typical work week;
- **one** reported working 60-80 hours in a typical work week.

*Id.*

In stark contrast, Defendants' internal investigation revealed that New York employees in Plaintiff's position tended to work many fewer hours than Ms. Barsa attested to, such that even if Ms. Barsa could establish liability, recovery would at most be in the range of 1-5 hours per week, on average. Defendants would show, through the testimony of supervisors and other employees, that Ms. Barsa dramatically overstated her hours and that other employees in Plaintiff's position typically work 40 hours per week, with no weekend work.

Because the Parties strongly disagree over the number of hours Plaintiffs worked, the Court would not be able to resolve this issue short of trial.  If the question of hours worked were presented to a jury, the jury may credit some of Plaintiffs' testimony and some of Defendants' testimony. For example, in *Monroe v. FTS USA, LLC,* 860 F.3d 389, 405 (6th Cir. 2017), the jury partially accepted the defendants' defenses and determined that the testifying technicians worked fewer hours than they claimed, which resulted in a reduction of damages. *See also Tyson Foods, Inc.  v. Bouaphakeo*, 136 S.Ct. 1036, 1044 (2016)(the jury determined some of the hours plaintiffs spent donning and doffing protective gear was compensable and some was not and reduced plaintiffs' damages in half).

The Parties recognize that at trial, the jury could resolve the question of hours worked with less than or greater than 3 hours worked per week. The table below shows the Plaintiffs' possible recovery if the jury finds Plaintiffs worked less than or more than 3 additional hours per week and compares that possible recovery to the gross amount Plaintiffs will recover through the Settlement:

**Potential Recovery Compared to Gross Settlement Fund ($100,000):**

| Additional Hours | 1 | 3 | 5 | 10 |
|---|---|---|---|---|
| Overtime Wages | $ 53,568.37 | $ 154,400.87 | $ 248,745.51 | $ 475,960.09 |
| 100% Liquidated Damages | $ 53,568.37 | $ 154,400.87 | $ 248,745.51 | $ 475,960.09 |
| % Recovery OT Wages | 187% | 65% | 40% | 21% |
| % Recover OT and LD | 93% | 32% | 20% | 11% |

Ex. 1, Salas Decl. ¶ 6.

Given this range of possible outcomes, the Parties' settlement calculation is reasonable in light of the risks Plaintiffs face prevailing at trial, proving their damages, and in facing likely appeals. *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of 25% of the maximum possible recovery).

The reasonableness of the award is further demonstrated by the fact that forty-one out of forty-three (95%) Plaintiffs signed the Settlement Agreement and agreed to the settlement awards allocated to them.

### III. Support for Attorneys' Fees and Costs Request

"Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees." *Khan v. Dunwoodie Gas Station, Inc.*, No. 19-CV-5581 (KMK), 2020 WL 1166180, at *5 (S.D.N.Y. Mar. 10, 2020). Plaintiffs are submitting to the Court their billing records documenting their request for attorneys' fees and expenses. These records show attorneys' fees amounting to over $475,000 for the Werman Salas P.C. law firm, alone.[3]  See Ex. 1, Salas Decl. ¶ 10.

Plaintiffs do not request their fees in this matter on a lodestar basis. Rather, the Plaintiffs request one-third of the gross settlement amount, which is common in FLSA settlements. *See, e.g.*, *Hyun v. Ippudo USA Holdings*, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) ("Fee awards representing one third of the total recovery are common in this District."). The Parties' calculation of the attorneys' fee based on the total funds available is

---

[3] This lodestar does not account for the fees incurred by the Siegel Law Group PLLC, the Hedgpeth Law Firm, PC, or the Sattiraju Law Firm, P.C.

consistent with Second Circuit precedent, particularly in light of the very high settlement participation percentage.[4] *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) ("An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *see also Hart v. RCI Hosp. Holdings, Inc.*, No. 09 CIV. 3043 PAE, 2015 WL 5577713, at *17 (S.D.N.Y. Sept. 22, 2015) (applying *Masters* in approving attorneys' fees in NYLL and FLSA action); *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010) ("[T]he value of legal service rendered in the creation of a settlement fund [is not] diminished by the failure of beneficiaries to cash in, regardless of what happens to the surplus.").

The requested fee is consistent with the Second Circuit's recent decision in *Fisher v. SD Prot. Inc.*, 948 F.3d 593 (2d Cir. 2020). There, the Court vacated the District Court's reduction of attorney fees and expenses from $23,000 *to* one-third of the settlement, which further underscores the reasonableness of the request for attorneys' fees in this matter. *Id*. at 605. *Fisher* did not address a scenario where the counsel requested one-third of the gross settlement fund, as Plaintiffs' Counsel does here. That case did not affect the long line of case law finding that the percentage of the fund method is appropriate in FLSA and NYLL cases. *See, e.g., Hyun*, 2016 WL 1222347, at *3; *Gaspar v. Personal Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015). In any event, the one-third percentage-of-the-fund request in the amount of $33,333.33 is the equivalent to a ***93%*** reduction of Werman Salas' lodestar.

---

[4] The amount being distributed under the Settlement is $99,180.66. Plaintiffs' Counsel's fees represent 33.6% of the amount being distributed ($33,333.33/$99,180.66).

Plaintiffs are also entitled to reasonable costs, which "'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher,* 948 F.3d 593, 600, citing *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278,283 (2d Cir. 1987). Plaintiffs' Counsel are submitting the underlying receipts and accounting for all the expenses they incurred to the Court for review. See Ex. 1, Salas Decl. ¶ 13.

### IV.     General Release

The Parties have entered into a stipulation agreeing that the General Release shall be stricken from the Settlement Agreement and be of no force of effect. ECF No. 144 (Stipulation Regarding Settlement). This Stipulation addresses the concern raised by the Court on Pages 12-15 of the July 10, 2020, Order.

### V.     Non-Publicity Provision

Similarly, the Parties have entered into a stipulation agreeing that the Non-Publicity Provision shall be stricken from the Settlement Agreement and be of no force of effect. ECF No. 144 (Stipulation Regarding Settlement). This Stipulation addresses the concern raised by the Court on Pages 15-16 of the July 10, 2020, Order.

### VI.     Conclusion

The Parties have submitted evidence supporting the conclusion that the settlement is fair and reasonable, submitted evidence supporting the request for attorneys' fees, and excised the general release provision and non-publicity provision from the Settlement Agreement. Accordingly, the parties respectfully request that Your Honor approve the settlement.

Respectfully submitted,

| | |
|---|---|
| By: */s/ Maureen A. Salas* | By: */s/ Hillary J. Massey* |

WERMAN SALAS P.C
Douglas M. Werman, *pro hac vice*
dwerman@flsalaw.com
Maureen A. Salas, *pro hac vice*
msalas@flsalaw.com
Sarah J. Arendt, *pro hac vice*
sarendt@flsalaw.com
77 West Washington St., Suite 1402
Chicago, IL 60602
(312) 419-1008

THE HEDGPETH LAW FIRM, PC
Travis M. Hedgpeth, *pro hac vice*
travis@hedgpethlaw.com
3050 Post Oak Bldv., Suite 510
Houston, Texas 77056

SIEGEL LAW GROUP PLLC
Jack Siegel, *pro hac vice*
jack@siegellawgroup.biz
2820 McKinnon, Suite 5009
Dallas, Texas 75201

THE SATTIRAJU LAW FIRM P.C.
Ravi Sattiraju
rsattiraju@sattirajulawfirm.com
116 Village Bldv.#200
Princeton, NJ 08540

*Attorneys for Plaintiffs*

SEYFARTH SHAW LLP
Maria Papasevastos
mpapasevastos@seyfarth.com
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5500

Barry J. Miller, *pro hac vice*
bmiller@seyfarth.com
Hillary J. Massey, *pro hac vice*
hmassey@seyfarth.com
Two Seaport Lane, suite 300
Boston, MA 02210-2028
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

Gregg A. Rubenstein
Gregg.Rubenstein@beaconhealthoptions.com
BEACON HEALTH OPTIONS, INC.
200 State Street, Ste. 302
Boston, MA 02109
Telephone: (617) 476-1653

*Attorneys for Defendants*

Dated: September 22, 2020